MITSUBOSHI BELTING LTD. AND MBL (USA) CORP, PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND GATES RUBBER CO., INTERVENOR-DEFENDANT

Court No. 93–09–00640

(Dated February 10, 1994)

*Sonnenberg, Anderson & Rodriguez (Steven P. Sonnenberg, Paul S. Anderson* and *Jacqueline M. Paez)* for the plaintiffs.
*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Michael S. Kane);* and *Stacy J. Ettinger,* U.S. Department of Commerce, of counsel, for the defendant.
*Stewart and Stewart (Terence P. Stewart* and *James R. Cannon, Jr.)* for the intervenor-defendant.

### MEMORANDUM AND ORDER

AQUILINO, *Judge:* Following publication by the International Trade Administration, U.S. Department of Commerce ("ITA") of *Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Japan; Final Results of Antidumping Duty Administrative Review,* 58 Fed.Reg. 44,496 (Aug. 23, 1993), the above-encaptioned action commenced with timely service and filing of a summons and of a complaint, which prays that the agency be ordered to consider and use the data obtained in the preceding administrative review as the "best information otherwise available" and also that liquidation of any entries under review be restrained "pending the resolution of the challenge to the injury determination in the underlying antidumping order."

I

The determination of the ITA for the preceding period June 7, 1989 to May 31, 1990 had been reported *sub nom. Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Japan; Final Results of Antidumping Duty Administrative Review,* 58 Fed.Reg. 30,018 (May 25, 1993). The above-named plaintiffs also complained to this court subsequent to that determination, CIT No. 93–06–00356, although their complaint did not contest the final results *per se* of the administrative review. Rather, plaintiffs' precise prayer for relief was that the court

> hold unlawful the issuance of liquidation instructions by the ITA pending the decision in *Bando Chemical Industries Ltd.* * * * *v. United States,* CIT Court No. 89–07–00399.
>
> Furthermore, upon a decision in *Bando* by the CIT that the ITC record did not support a finding of threat of material injury and that such a finding is not in accordance with the law, the Plaintiff respectfully requests this Court to hold unlawful the Final Results by the ITA.

That complaint correctly alleged that the *Bando* case was pending in this Court of International Trade and that it contested

> the final affirmative determination rendered by the U.S. International Trade Commission ("ITC") in Industrial Belts from Japan, Investigation No. 731–TA–414.
>
> 11. If the CIT finds in *Bando* that there was not substantial evidence on the record to support a finding of threat of material injury to a domestic industry from imports of industrial belts imported from Japan, and that such finding is otherwise not in accordance with law, the Antidumping Duty Order issued by the Commerce Department will be revoked, and no antidumping duties will be assessed on industrial belts imported from Japan.

However, subsequent to the filing of that complaint, on August 6, 1993 the court handed down Slip Op. 93–150, 17 CIT 798, in *Bando* (and in *Pirelli Trasmissioni Industriali, S.p.A. v. United States,* CIT No. 89–07–00430), affirming the views after remand of ITC Commissioner David B. Rohr that the domestic industries for power-transmission belts are threatened with material injury by reason of imports from Japan (and Italy). The effect of this affirmance was to confirm the determination of material injury by the ITC.[1]

The government interposed a motion to dismiss that complaint, which this court granted upon a conclusion that it was too attenuated to amount to a claim upon which any relief could then be obtained.[2]

---

[1] *See generally Bando Chemical Industries, Ltd. v. United States,* 16 CIT 133, 787 F.Supp. 224 (1992).
The court's judgment entered in *Bando* in conjunction with Slip Op. 93–150 has been appealed, No. 94–1011 (Fed.Cir. Oct. 13, 1993).

[2] *See Mitsuboshi Belting Limited v. United States,* 17 CIT 1156, Slip Op. 93–205 (Oct. 22, 1993).
The plaintiffs have appealed from the judgment of dismissal entered in conjunction with this opinion, No. 94–1083 (Fed.Cir. Nov. 30, 1993).

## II

Against this background come now the plaintiffs with a motion requesting

> amendment of the agency record filed with the court in the above-captioned case to include the complete agency record on file with the * *·* ITA * * * at the time that the challenged determination was being conducted. This would include the agency record relating to the petition filed by The Gates Rubber Company, the agency record relating to the original less-than-fair-value investigation which led to the issuance of the antidumping order, and the agency record relating to the administrative review covering the period June 7, 1989 through May 31, 1990 * * *.

They enumerate some twenty-three points in support of the motion, including (2) the final results of the administrative review challenged herein are based upon best information otherwise available; (3) that information was taken from the record of the underlying less-than-fair-value investigation; (4) the ITA ignored information in the record of its preceding, first administrative review; (8) the information relied upon by the agency is demonstrably less probative than that developed during the preceding review; (11) the record filed herein does not contain the records of the original investigation and preceding administrative review; (15) the inclusion of those records herein is necessary in order for this court to decide whether the agency deliberately ignored relevant information and applied the antidumping statute in a punitive manner; and (20) this is a rare or exceptional case which compels amendment despite the certification of completeness filed by the ITA.

Plaintiffs' characterization "rare or exceptional" warrants remark. Indeed, in this court's experience, seldom have parties to one proceeding sought such wholesale inclusion in its record of the records of other proceedings, even though arguably related. Also, the plaintiffs seemingly continue to seek injunctive relief already twice denied by the court.

## A

As indicated in point I above, those prior actions have some bearing on this one. *MBL (USA) Corporation v. United States,* 14 CIT 161, 733 F.Supp. 379 (1990), familiarity with which is presumed, found that plaintiffs' counsel had filed a notice of appearance before the ITC, stating, among other things, that they "intend[ed] to participate fully in the [   ] investigations and to file briefs and statements with the Commission." Thereafter, however, those lawyers sent a letter to the ITC reporting:

> On instructions from our clients * * *, we hereby withdraw their appearance as parties in this investigation. We likewise withdraw the notice of appearance at the hearing in this matter filed last week. Our clients will not be filing briefs in this matter, through counsel or otherwise, nor will they or their attorneys or representatives be appearing at the hearing in this matter.

The Commission reacted accordingly, serving copies of this withdrawal statement on all other parties.

After publication of *Antidumping Duty Order of Sales at Less Than Fair Value; Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Japan,* 54 Fed.Reg. 25,314 (June 14, 1989), the plaintiffs served and filed a complaint, contesting the effective date of the order. Thereafter, they also filed an amended complaint, adding a second count which sought to contest the affirmative injury determination of the ITC underlying the order. The defendant responded with a motion for summary judgment on that count, arguing, among other grounds, that the plaintiffs lacked standing to contest the injury determination.

This court concurred. Among other things, the court found that the plaintiffs had abandoned the proceedings before the Commission and recited the principle that issues not raised in a forum *nisi prius* cannot be raised on appeal. The court further found that their amended complaint had been served and filed beyond the time allowed to invoke judicial review and concluded that their summons and original complaint had not stopped the running of the 30-day statutory period as against the ITC, quoting *Georgetown Steel Corporation v. United States,* 801 F.2d 1308, 1312 (Fed. Cir. 1986):

> Since section 1516a(a)(2)(A) specifies the terms and conditions upon which the United States has waived its sovereign immunity in consenting to be sued in the Court of International Trade, those limitations must be strictly observed and are not subject to implied exceptions. *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). If a litigant fails to comply with the terms upon which the United States has consented to be sued, the court has no "jurisdiction to entertain the suit." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 [1980] (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)).

Again as recited above, the plaintiffs did file a complaint after publication of the final results of the first ITA review of that antidumping-duty order, albeit not directly contesting them. Whereupon this court, in granting defendant's motion to dismiss per Slip Op. 93–205, familiarity with which also is presumed, stated that it could not

> conclude that plaintiffs' * * * pleading raises any issue not already decided against them in *MBL (USA) Corporation v. United States, supra.* The aim then and now is judicial vacation of the ITC's affirmative determination. Some interested parties to the proceedings before the Commission have preserved their standing to pursue that relief. The plaintiffs, on the other hand, did not and have not. The formal adjudication of their lack of standing in 1990 has not been overcome by the current complaint. That is, the court concludes that it fails to state a claim upon which relief can be granted. Indeed, even if the question of standing were not foreclosed as a matter of law, the plaintiffs have failed to show how the issuance of

liquidation instructions by the ITA would be unlawful as to them simply because the parties in other litigation are still availing themselves of the right to further judicial appeal.

17 CIT at 1162–63, Slip Op. 93–205, at 10–11 (footnote omitted).

In other words, the plaintiffs abjured administrative and thus judicial review of the issue of material injury to the domestic industries by reason of imports of their power-transmission belts and they also forsook any judicial review of the results of the first administrative review of the resultant antidumping-duty order.

## B

With regard to the administrative review at hand, the plaintiffs do complain about the ITA's reliance on best information otherwise available. In doing so, they have obtained a preliminary injunction, suspending at least liquidation of their entries during the period under review. But they also seek to parlay this present posture into retrieval of the agency records which have already been laid to rest as to them.

Paragraph (13) of plaintiffs' motion to amend states that the "intent of section 1516a(b)(2) 'is that the court have a meaningful and comprehensive record before it on review with the express purpose of eliminating the necessity of a *de novo* review in antidumping actions[']", quoting from *Melamine Chemicals, Inc. v. United States*, 2 CIT 113, 116 (1981). They attempt to distinguish that action from this one by claiming that they "are not attempting to include in the Administrative Record information that was submitted to any agency other than the ITA"[3] and *Nakajima All Co. v. United States*, 2 CIT 25 (1981), by claiming not to seek inclusion of "documents which were not before the agency at th[e] time of its determination."[4] Nor do the plaintiffs claim to seek "any information dating after the final determination challenged."[5] They quote at length from *Floral Trade Council of Davis, California v. United States*, 13 CIT 242, 242–43, 709 F. Supp. 229, 230 (1989), to wit:

> * * * [T]he record is not limited to documents "relied on or used" by the agency. * * * That is, the agency cannot ignore relevant information which is before it, and the reviewing court must be in a position to determine if it had done so. This is not to say that all documents found at the agency are before it for purposes of the determination to be reviewed, but rather, that those documents at the agency which become sufficiently interwined with the relevant inquiry are part of the record, no matter how or when they arrived at the agency. *Cf. Bethlehem Steel Corp. v. United States*, 5 CIT 126, 566 F.Supp. 346 (1983) (documents from other investigations which were not "intimately related" to the investigation at issue were not part of the record). Essentially, the dispute may be resolved by

---

[3] Plaintiffs' Motion to Amend, para. (17).

[4] *Id.*, para. (18).

[5] *Id.*

applying some common sense. The question to be asked is whether the decision can be reviewed properly without certain documents.

Plaintiffs' Motion to Amend, para. (14). The plaintiffs contend that the data they wish to include are intertwined with the administrative review at issue herein and that "[t]heir inclusion is necessary in order for this court to decide whether the agency deliberately ignored relevant information and applied the antidumping statute in a punitive manner." *Id.,* para. (15).

Unlike *Floral Trade Council* however, this action does not concern the scope of the antidumping-duty order, in which circumstance the agency is required to re-examine the less-than-fair-value determination as to its coverage. *See, e.g., Smith Corona Corp. v. United States,* 915 F.2d 683, 685 (Fed.Cir. 1990). And in *Bethlehem Steel Corp. v. United States,* which is cited above, the plaintiff had sought (without success) to incorporate into its record information from the records of other, contemporaneous investigations.

In this action, the defendant points out that plaintiff MBL did not respond to the ITA's questionnaire and that it thus acknowledged that the agency's resort to best information otherwise available was authorized. *See* 58 Fed.Reg. at 44,496. Moreover, the plaintiffs had an opportunity to submit information contained in the records of prior proceedings during the review in question but did not do so. This failure, standing out now on its own, cannot be equated with an "exceptional" or "rare" circumstance. *Cf. National Corn Growers Ass'n v. Baker,* 10 CIT 345, 348–50, 636 F.Supp. 921, 929–30 (1986), *rev'd on other grounds,* 840 F.2d 1547 (Fed.Cir. 1988). *See generally Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402 (1971). Rather, it simply reflects a tactic of plaintiffs' own design, one for which they must now bear sole responsibility. That is, from the record at bar, this court is unable to discern any bad faith or improper proceeding on the part of the ITA. *Cf. Saha Thai Steel Pipe Co. v. United States,* 11 CIT 257, 259, 661 F.Supp. 1198, 1200–01 (1987); *Armco Inc. v. United States,* 13 CIT 387, 388–89, 712 F.Supp. 214, 216 (1989). Hence, plaintiffs' motion to amend their record (and the accompanying request for oral argument) must be, and they hereby are, denied.

### III

The court's scheduling order dated December 3, 1993 is hereby amended to provide that the plaintiffs may present on or before March 4, 1994 a motion for judgment on the ITA record on file herein[6], the other terms and conditions of that order to remain in full force and effect.

---

[6] Section 1516a(b)(2)(A) of Title 19, U.S.C. provides that the record for review in general shall consist of

(i) a copy of all information presented to or obtained by the * * * [ITA] during the course of the administrative proceeding, including all governmental memoranda pertaining to the case and the record of *ex parte* meetings required to be kept by section 1677f(a)–(3) of this title; and

(ii) a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the Federal Register.