**Slip-Op. 01-153**

# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:  RICHARD K. EATON, JUDGE**

| | | |
|---|---|---|
| **NIPPON STEEL CORP., KAWASAKI STEEL CORP., and ACCIAI TERNI S.p.A and ACCIAI TERNI (USA),** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **Consol. Court No. 01-00103** |
| | : | |
| **UNITED STATES INTERNATIONAL TRADE COMMISSION** | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| **ALLEGHENY LUDLUM CORP., AK STEEL CORP., BUTLER ARMCO INDEPENDENT UNION, ZANESVILLE ARMCO INDEPENDENT UNION, and UNITED STEELWORKERS OF AMERICA, AFL-CIO/CLC,** | : | |
| | : | |
| Defendant-Intervenors. | : | |

Foreign producers of grain-oriented silicon electrical steel ("Plaintiffs") filed complaints contesting affirmative injury determination sustained by three-to-three vote in the context of sunset review conducted by the International Trade Commission ("ITC").  Plaintiffs challenged, among other things, validity of the ITC's procedures in conducting vote sustaining affirmative injury determination, and resulting antidumping duty orders; and sought discovery to obtain evidence substantiating certain of their allegations.  The ITC moved to have Counts One and Two of Plaintiffs' complaints dismissed asserting court lacked jurisdiction over matters alleged therein or, in the alternative, that Plaintiffs lacked standing.  In addition, the ITC moved to quash Plaintiffs' discovery requests.  The Court of International Trade, Eaton, J.: (1) denied the ITC's motion to dismiss, finding court had jurisdiction pursuant to 28 U.S.C. 1581(c) (1994) and Plaintiffs had standing; and (2) granted Plaintiffs' discovery requests.

[ITC's motion denied; Plaintiffs' discovery requests granted.]

Dated: December 28, 2001

*Gibson, Dunn & Crutcher, LLP* (*Joseph H. Price, Douglas R. Cox, Gracia M. Berg, Gregory C. Gerdes*), for Plaintiff Nippon Steel Corporation.

*Arent Fox Kintner Plotkin & Kahn, PLLC* (*Robert H. Huey, Matthew J. Clark, Nancy A. Noonan*, *Steven F. Hill, Timothy D. Osterhaus*), for Plaintiff Kawaski Steel Corporation.

*Hogan & Hartson, LLP* (*Lewis E. Leibowitz, Steven J. Routh, David E. Leitch, T. Clark Weymouth, David P. Kassebaum*), for Plaintiffs Acciai Speciali Terni S.p.A. and Acciai Speciali Terni USA, Inc.

*Lyn M. Schlitt*, General Counsel, United States International Trade Commission; *James M. Lyons*, Deputy General Counsel, United States International Trade Commission (*Gracemary Rizzo*), for the ITC.

*Collier Shannon Scott, PLLC* (*Kathleen W. Cannon, Michael J. Coursey, Eric R. McClafferty, John M. Herrmann, Grace W. Kim*), for Defendant-Interveners Allegheny Ludlum Corporation, AK Steel Corporation, Butler Armco Independent Union, Zanesville Armco Independent Union, and the United Steelworkers of America, AFL-CIO/CLC.

**OPINION AND ORDER**

**EATON, JUDGE:**  Before the court is the motion of the United States International Trade Commission ("ITC" or "Commission") to dismiss Counts One and Two of the complaints filed by Nippon Steel Corporation ("Nippon"), Kawaski Steel Corporation, Acciai Terni S.p.A. and Acciai Terni (USA) (collectively "Plaintiffs") and to quash Plaintiffs' related discovery requests made pursuant to USCIT R. 33, 34, and 36.

By their complaints in this consolidated action, Plaintiffs challenge the ITC's affirmative material injury determination in the context of a five-year sunset review with respect to imports

of grain-oriented silicon electrical steel from Italy and Japan.  See Grain-Oriented Silicon Elect.

Steel From Italy and Japan, 66 Fed. Reg. 12,958 (Mar. 1, 2001); see also USITC Pub. No. 3396

(Feb. 26, 2001) ("Final Results").  Counts One and Two of these complaints claim that the ITC's

final determination:

> [W]as not in accordance with law because of the crucial deciding
> vote of Dennis M. Devaney, who was not lawfully appointed to be
> an ITC commissioner at the time of that vote.[1]  Specifically,
> Plaintiffs allege . . . that the attempted recess appointment of Mr.
> Devaney was invalid because there was neither a Senate recess nor
> a vacancy on the ITC at the time of the purported [recess]
> appointment.

(Pls.' Mem. Opp'n to Def.'s Mot. Dismiss at 2 (citation omitted); see also Nippon Compl. Count

One ¶¶ 18, 19; Count Two ¶¶ 27, 28.)  Plaintiffs also seek discovery to obtain evidence to

substantiate their allegations.

        The ITC moves[2] to dismiss Plaintiffs' Counts One and Two by asserting that this court

"lacks subject matter jurisdiction under both 28 U.S.C. § 1581(c) and (i); and plaintiffs lack

standing to challenge the President's recess appointment of Commissioner Devaney . . . ."

(Def.'s Mem. Supp. Mot. Dismiss at 1–2.)  In addition, the ITC seeks to quash Plaintiffs'

---

[1]        Each Plaintiff filed a complaint in this consolidated action.  While Counts One and Two of each complaint take issue with the manner of Mr. Devaney's appointment as to:  (1) the validity of the recess appointment; and (2) the existence of a vacancy, they do not do so in the same order.  For purposes of this opinion, the court follows the order of the Nippon complaint.

[2]        Here, the ITC challenges the court's jurisdiction pursuant to USCIT R.12(h)(3), which states, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  However, since subsection (h) preserves the defense of subject matter jurisdiction so that it might be raised at any time in an action, the court understands the ITC to have intended to challenge the court's jurisdiction pursuant to USCIT R. 12(b)(1), "Defenses and Objections . . . By Pleadings or Motion . . . ."

discovery requests. (Id. at 2.) For the reasons set forth below, the court denies the ITC's motion

and grants Plaintiffs' discovery requests.

## STANDARD OF REVIEW

Where a party's "12(b)(1) motion simply challenges the court's subject matter

jurisdiction based on the sufficiency of the pleading's allegations—that is, the movant presents a

'facial' attack on the pleading—then those allegations are taken as true and construed in a light

most favorable to the complainant." Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583

(Fed. Cir. 1993) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Moreover, "[a] 'facial

attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently

alleged a basis of subject matter jurisdiction . . . ." Fed. Election Comm'n v. Nat'l Rifle Assoc.,

553 F. Supp. 1331, 1343 (D.D.C. 1983) (quoting Menchaca v. Chrysler Credit Corp., 613 F.2d

507, 511 (5th Cir. 1980)).

## BACKGROUND

By its Final Results,[3] the ITC sustained the existing antidumping duty orders on grain-

---

[3]      19 U.S.C. § 1675(c) reads as follows:

(1) In general . . .

    5 years after the date of publication of—

    (A) . . . . an antidumping duty order . . .

    the administering authority and the Commission
    shall conduct a review to determine . . . whether
    revocation of the . . . antidumping duty order . . .

oriented electrical silicon steel from Italy and Japan by finding that "revocation of the[se] antidumping orders . . . would likely lead to continuation or recurrence of material injury to an industry in the United States . . . ." See Final Results at 1 (footnote omitted). The ITC reached this finding by a three-to-three—i.e., evenly divided—vote of its Commissioners and, thus, the antidumping duty orders remained in effect pursuant to 19 U.S.C. § 1677(11).[4] The three persons voting in the affirmative were Stephen Koplan, Marcia Miller and Dennis M. Devaney. According to the ITC,

> Commissioner Devaney was appointed to the Commission by President Clinton on the morning of January 3, 2001, before the Senate returned to session later that same day.[5] Commissioner Devaney was appointed to the Commission seat, which at the time of his appointment was occupied by Commissioner Thelma Askey,

---

> would be likely to lead to continuation or recurrence of dumping . . . and of material injury.

19 U.S.C. § 1675(c)(1)(A) (1994). The antidumping duty orders that were the subject of the sunset review were published on June 10, 1994, and August 12, 1994, respectively. See Antidumping Duty Order: Grain-Oriented Elect. Steel From Japan, 59 Fed. Reg. 29,984 (June 10, 1994); Antidumping Duty Order: Grain-Oriented Elect. Steel From Italy, 59 Fed. Reg. 41,431 (Aug. 12, 1993).

[4]      This subsection provides,

> If the Commissioners voting on a determination . . . are evenly divided as to whether the determination should be affirmative or negative, the Commission shall be deemed to have made an affirmative determination.

19 U.S.C. § 1677(11) (1994).

[5]      The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their Next Session.

U.S. CONST. art. II, § 2, cl. 3.

> a holdover commissioner. Commissioner Askey had been appointed by President Clinton in 1998. Commissioner Askey's term had expired on December 16, 2000, but she continued to serve at the Commission until her successor, Commissioner designee Devaney, was qualified. Pursuant to 19 U.S.C. 1330(b)(2), "any commissioner may continue to serve as a commissioner after an expiration of his term of office until his successor is appointed and qualified." Commissioner Devaney took his oath of office on January 16, 2001.

(Def.'s Mem. Supp. Mot. Dismiss at 2–3 (citation omitted).)

Following publication of the Final Results Plaintiffs filed their actions, which, among other things, challenge the legitimacy of the procedures by which Mr. Devaney assumed office and, therefore, the lawfulness of his participation in the vote sustaining the affirmative injury determination. In Count One of these complaints, Plaintiffs assert that the process by which Mr. Devaney assumed office was not lawfully completed during a Senate recess and, therefore, "[b]ecause Dennis Devaney's alleged appointment to the ITC was invalid, his vote [on the Final Results was] invalid." (Compl. ¶ 18.) Plaintiffs further allege that "[a]s a result of Dennis Devaney's invalid vote and determination, the Commission's determination . . . was not in accordance with law." (Id. ¶ 19.) In like manner, Plaintiffs' Count Two alleges that, because no vacancy existed at the time Mr. Devaney assumed office, Mr. Devaney was not lawfully appointed and, thus, ineligible to vote on the Commission's determination leading to the Final Results. Because of these alleged irregularities, Plaintiffs ask the court to "[d]eclare unlawful Dennis Devaney's vote and determination with regard to the [Final Results]" and "[d]eclare that the ITC shall instruct the U.S. Department of Commerce to revoke the antidumping order[s] . . . ." (Compl. at 10, 11.)

To substantiate their allegations, Plaintiffs seek discovery "to elicit information uniquely in [the ITC's] control concerning, inter alia, the legal and procedural aspects of the purported appointment of Mr. Devaney on January 3, 2001, including information about the time at which the President signed Mr. Devaney's commission."  (Pls.' Mem. Opp'n to Def.'s Mot. Dismiss at 2.)

By its motion, the ITC asserts that this court lacks subject matter jurisdiction over Counts One and Two of Plaintiffs' complaints.  As to Plaintiffs' claim that jurisdiction lies under 28 U.S.C. § 1581(c),[6] the ITC contends:

> [P]laintiffs are challenging the President's exercise of his constitutional powers of recess appointment with respect to the Commission.  The question of whether President Clinton properly invoked his power to make a recess appointment is at the heart of plaintiffs' allegations . . . and the substance of those allegations cannot be made to fit within the carefully tailored scope of the Court's subject matter jurisdiction under Section 1516a(a)1.[7]

---

[6]     The statute provides, in relevant part:

Civil actions against the United States and agencies and officers thereof . . . .

(c)  The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under [19 U.S.C. § 1516a].

28 U.S.C. § 1581(c) (1994).

[7]     The ITC probably intended to cite a different subsection of 1516a which states:

The determinations which may be contested under subparagraph (A) are as follows . . .

(iii) A final determination, other than a determination

> The exercise of the President's recess appointment authority is neither a factual finding nor a legal conclusion upon which the instant sunset review determination is based.

(Def.'s Mem. Supp. Mot. Dismiss at 5.)

As to Plaintiffs' alternative claim that the court has jurisdiction under 28 U.S.C. § 1581(i),[8] the ITC similarly contends that Plaintiffs are asking "this Court to construe provisions

---

> reviewable under [19 U.S.C. § 1516a(a)](1), by the administering authority or the Commission under section 1675 of this title.

19 U.S.C. § 1516a(a)(2)(B)(iii) (1994); further, subparagraph (A) states that, in contesting such determination,

> [A]n interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing . . . a complaint . . . contesting any factual findings or legal conclusions upon which the determination is based.

19 U.S.C. § 1516a(a)(2)(A). Judicially reviewable final determinations under this subparagraph include five-year sunset reviews. See 19 U.S.C. 1675(c).

[8] Section 1581(i) of Title 28, which provides for the court's residual jurisdiction, states:

> (i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . .
>
> > (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

of the Constitution and to determine whether the President acted in accordance with its provisions in making the contested recess appointment." (Def.'s Mem. Supp. Mot. Dismiss at 7.)

In the alternative, the ITC questions Plaintiffs' standing by asserting that, even if Commissioner Devaney's recess appointment were unlawful, Plaintiffs, nonetheless, do not have an individually protected interest in the President's exercise of his power of appointment under the Constitution. (Id. at 8–9.)

Finally, the ITC contests Plaintiffs' discovery requests on the grounds that "[i]n . . . challenging [the] Commission's final determinations, whether pursuant to [28 U.S.C. §§] 1581(c) or 1581(i), the scope of review is confined to information contained in the administrative record." (Def.'s Mem. Supp. Mot. Dismiss at 17–18.)

## DISCUSSION

The court does not find the ITC's arguments convincing. Rather than asking the court to review the President's exercise of his recess appointment power under the Constitution, Plaintiffs, by their complaints, are merely seeking review of the ITC's adherence to its procedures in reaching its decision in the Final Results. In other words, Plaintiffs wish the court

---

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable . . . by the Court of International Trade under [19 U.S.C. § 1516a (1994)] . . . .

28 U.S.C. § 1581(i)(4) (1994).

to determine whether the Commissioners of the ITC allowed someone who was not a Commissioner to cast a vote in the determination of the Final Results.[9] That this court has the jurisdiction to decide matters relating to the procedures employed by the ITC in reaching a final determination is well settled. Koyo Seiko Co. v. United States, 13 CIT 461, 464, 715 F. Supp. 1097, 1099–100 (1989) (quoting PPG Indus. v. United States, 2 CIT 110, 113, 525 F. Supp. 883, 885 (1981) ("It is not disputed that the court under . . . § 1581(c) [has] jurisdiction . . . [and, therefore,] 'all procedural considerations should be decided by this Court [once] the final agency determination is made.'")); Montgomery Ward & Co. v. Zenith Radio Corp., 673 F.2d 1254, 1260 (C.C.P.A. 1982) ("'[D]eterminations' must be made in accordance with delineated procedures . . . . Thus, the merits of a determination, as well as its procedural correctness, are subject to judicial review."). At no point does the ITC question the court's authority to hear and decide the merits of the substantive issues raised in Plaintiffs' complaints; nor would there be any basis for the ITC to do so, since the court clearly has jurisdiction to hear substantive issues relating to a five-year sunset review. See, e.g., Chefline Corp. v. United States, 25 CIT __, Slip Op. 01-118 (Sept. 26, 2001). As such matters are now properly before the court, so too are matters of procedure relating to them. This being the case, as the question of who is entitled to cast a vote on an ITC final determination is surely a question of procedure, it is surely within the competence of this court to hear such question. Thus, the court finds that it has jurisdiction, in

---

[9]    Section 1330 states, inter alia, "The United States International Trade Commission . . . shall be composed of six commissioners who shall be appointed by the President, by and with the advice and consent of the Senate." 19 U.S.C. § 1330(a) (1994); section 1675a provides, inter alia, "In a review conducted under section 1675 . . . (c) of this title, the Commission shall determine whether revocation of an [antidumping duty] order . . . would be likely to lead to continuation or recurrence of a material injury . . . . " 19 U.S.C. § 1675a(a) (1994).

the context of an affirmative finding of injury in a five-year sunset review, to hear procedural

questions relating thereto, including the claims found in Counts One and Two of Plaintiffs'

complaints.[10]  28 U.S.C. § 1581(c); 19 U.S.C. § 1516a(a)(2)(B)(iii).


It is worth noting that, should the court ultimately find for the Plaintiffs, complete relief

can be afforded them within the confines of the ITC itself.  Compare Swan v. Clinton, 100 F.3d

973, 989 (D.C. Cir. 1996) (Silberman concurring) ("We could thus compel all officials at the

Board to treat Swan as the rightful incumbent and, consequently, to ignore Wheat, at least

officially.").


Next, the court turns to the question of standing to sue.  The ITC asserts that Plaintiffs

lack standing based on its argument that Plaintiffs:

> [H]ave no individually protected interest that the President
> properly exercise his appointment power with respect to the
> Commission[] [and that] they do not have an individually protected
> interest that only persons appointed by the President and confirmed
> by the Senate make up the Commission.

(Id. at 8–9.)  However, the court has found that the President's appointment power is not at issue

in this case.  Rather, at issue are the procedures employed by the ITC in reaching the final

determination contained in the Final Results.[11]  As a result, since the Plaintiffs may have suffered

---

[10]     As the court finds that it has jurisdiction to hear the matters raised in Counts One and Two of the Plaintiffs' complaints pursuant to 28 U.S.C. § 1581(c), it need not address the question of whether it has subject matter jurisdiction under 28 U.S.C. § 1581(i).

[11]     Plaintiffs also satisfy the requirement that: (1) they be "interested parties," within the meaning of 19 U.S.C. 1677(9); and that (2) they participated in the proceedings before the ITC leading to the Final Results.  See 28 U.S.C. § 2631(c); Brother Indus., Ltd., v. United States,

"injury in fact" from the ITC's determination, and are "arguably within the zone of interest

sought to be protected" by a five-year sunset review, Plaintiffs have standing.  Duty Free Int'l,

Inc. v. United States, 16 CIT 163, 163–64 (1992) (quoting Assoc. of Data Processing Serv. Orgs.,

Inc. v. Camp, 397 U.S. 150, 152–53 (1970)); 19 U.S.C. § 1675(c); 5 U.S.C. § 702 (1994);

Moreover, despite the ITC's arguments to the contrary, a constitutionally based

"individually protected right" is not a prerequisite for the Plaintiffs to have standing to contest

the issues raised by Counts One and Two of their complaints.  Transcom, Inc. v. United States,

182 F.3d 876, 880 (Fed. Cir. 1999) ("[W]e need not address [plaintiff]'s argument that . . . the

scope of the administrative reviews violated [its] rights under the due process clause of the Fifth

Amendment to the Constitution, because we hold that Commerce's conduct in this case violated

Commerce's statutory and regulatory . . . obligations in connection with the administrative

reviews.").

Finally, the court turns to the issue of discovery.  While discovery is not normally

permitted in a case brought pursuant to 28 U.S.C. § 1581(c), see Saha Thai Steel Pipe Co., Ltd. v.

United States, 11 CIT 257, 259, 661 F. Supp. 1198, 1201 (1987) (citation omitted), it has been

allowed under other than normal circumstances.  See NEC Corp. v. United States, 21 CIT 198,

205–06, 958 F. Supp. 624, 631–32 (1997); see also Atl. Sugar, Ltd. v. United States, 85 Cust. Ct.

---

16 CIT 150, 151–52, 787 F. Supp. 1454, 1455–56 (1992) (citing Citrosuco Paulista, S.A. v. United States, 12 CIT 1196, 1199–1201, 704 F. Supp. 1075, 1081–82 (1988)) ("The statute requires that [the] part[ies] must be interested and must have participated before the ITC."); see also 64 Fed. Reg. 41,433 (July 5, 2000); Final Results at 3, App. B-5.

131, 131 (1980) ("Th[e] instances of review on the record in which interrogatories were permitted were either cases of apparent incompleteness of the record . . . or clear failures to articulate the administrative findings . . . ." (citations omitted)). "Plaintiffs may [, however,] engage in discovery outside the administrative record if they demonstrate that there is a reasonable basis to believe the administrative record is incomplete." Saha Thai Steel Pipe Co., Ltd., at 261– 62, 661 F. Supp. at 1202 (citing Tex. Steel Co. v. Donovan, 93 F.R.D. 619, 621 (N.D. Tex. 1982); Natural Res. Def. Counsel, Inc. v. Train, 519 F.2d 287, 291–92 (D.C. Cir. 1975)).

Here, by offering to supplement the record with additional documents (see, e.g., Def.'s Mem. Supp. Mot. Dismiss, Attach. 1 (Declaration of G. Timothy Saunders ("Saunders Declaration")), Attach. 2 (letter from Nash to Askey of 1/02/01 ("Nash Letter"))) the ITC acknowledges that the record is incomplete. These documents, though useful, each answer some questions while raising others. For instance, the Nash Letter indicates that Mr. Nash had the authority to"reliev[e] [Ms. Askey, effective January 2, 2001,] of [her] position and responsibilities as a member of the International Trade Commission." (Nash Letter at 1.) In the Saunders Declaration, Mr. Saunders appears to agree that the Nash Letter "served as notice to the Executive Clerk's Office that a vacancy existed in Ms. Askey's former seat on the USITC." (Declaration at 1.) This, despite statutory language providing "any commissioner may continue to serve as a commissioner after an expiration of his term of office until his successor is appointed and qualified." 19 U.S.C. § 1330(b)(2). Thus, there appears to be a certain amount of uncertainty as to how the vacancy was created and when, since the earliest date claimed for Mr.

Devaney's appointment is January 3, 2001. (See Def's Mem. Supp. Mot. Dismiss at 2–3.)

Plaintiffs also seek to supplement the record with the affidavit of Joseph H. Price, which raises

significant questions not put to rest by the ITC's offered documents:

> Plaintiffs have reason to believe that evidence in Defendant's control will likely rebut the Saunders Declaration's contention that something called a "recess appointment order" effectuated Mr. Devaney's purported recess appointment at 10:20 a.m. on January 3, 2001. As discussed in more detail in Plaintiffs' Opposition, established legal precedent shows that an appointment to the ITC takes place when the President signs a commission — not when the President approves a so-called "recess appointment order."
>
> [Moreover], the Saunders Declaration . . . does not mention the time at which President Clinton signed Mr. Devaney's ITC commission — thus raising the distinct likelihood that the commission was not signed during a recess of the Senate. Plaintiffs therefore have reason to believe that discovery regarding the exact time at which Mr. Devaney's commission was signed by President Clinton will likely lead to evidence that will rebut the Saunders Declaration and create an issue of material fact concerning the time at which the purported recess appointment was completed.

(Pls.' Mem. Opp'n Def.'s Mot. Dismiss, Ex. 4 ¶¶ 9, 10. (citation omitted; emphasis in original))

The court need not pass on the legal questions concerning the creation of a vacancy, or the

distinctions between a "recess appointment order" and a Presidential "commission" to find that

"there is a reasonable basis to believe the administrative record is incomplete." Saha Thai Steel

Pipe Co., Ltd., at 261–62, 661 F. Supp. at 1202. Here, an examination of the record reveals that

the facts needed to either substantiate or refute the allegations found in Counts One and Two of

the complaints are not present, nor would they normally be. Plaintiffs' requests for discovery

are, therefore, granted.

## CONCLUSION

For the reasons set forth above, the court denies the ITC's motion to dismiss Counts One

and Two of Plaintiff's complaints, and grants Plaintiffs' requests for discovery.


_____
                                           Richard K. Eaton, Judge


Dated:  December 28, 2001
        New York, New York