**Slip Op. 05-56**

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

|  |  |  |
|---|---|---|
| _____ : | | |
| ALLIED TUBE & CONDUIT CORP. : <br> and WHEATLAND TUBE COMPANY, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> UNITED STATES, : <br> : <br> Defendant, : <br> : <br> and : <br> : <br> BORUSAN BIRLESIK BORU : <br> FABRIKALARI A.S., : <br> : <br> Defendant-Intervenor. : <br> _____ : | | Court No. 04-00439 |

This action concerns the claims raised by Allied Tube & Conduit Corp. and Wheatland Tube Company (collectively "Allied Tube"), who move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging the Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled <u>Notice of Final Results of Antidumping Administrative Review for Certain Welded Carbon Steel Pipe and Tube from Turkey</u> ("<u>Final Results</u>"), 69 Fed. Reg. 48,843 (Aug. 11, 2004). Allied Tube complains that Commerce violated the statute, legislative history and its own policy by failing to require proof of import duties paid on inputs used in producing the merchandise subject to this action, which was sold in the home market. Moreover, Allied Tube claims that the record does not contain substantial evidence to support Commerce's conclusion that import duties were paid on inputs used in production for home market sales.

Commerce maintains that it properly applied its standard two-prong test for granting a duty drawback adjustment and properly determined that Borusan Birlesik Boru Fabrikalari A.S. ("Borusan") satisfied the requirements of such test. Commerce maintains that it verified that Borusan paid duties upon inputs used in the production of merchandise sold domestically. Borusan adds that there is no additional requirement that a respondent show that it paid duties on other imported raw materials or that its home market

price was based on a duty-inclusive cost.

    **Held**: Allied Tube's 56.2 motion is denied. Case dismissed.

Dated: May 12, 2005

    Schagrin Associates (Roger B. Schagrin) for Allied Tube & Conduit Conduit Corp. and Wheatland Tube Company, plaintiffs.

    Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Kelly B. Blank); of counsel: James K. Lockett, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for the United States, defendant.

    Lafave & Sailer LLP (Arthur J. Lafave III) for Borusan Birlesik Boru Fabrikalari A.S., defendant-intervenor.

## OPINION

    **TSOUCALAS, Senior Judge**: This action concerns the claims raised by Allied Tube & Conduit Corp. and Wheatland Tube Company (collectively "Allied Tube"), who move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging the Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled Notice of Final Results of Antidumping Administrative Review for Certain Welded Carbon Steel Pipe and Tube from Turkey ("Final Results"), 69 Fed. Reg. 48,843 (Aug. 11, 2004). Allied Tube complains that Commerce violated the statute, legislative history and its own policy by failing to require proof of import duties paid on inputs used in producing the merchandise

subject to this action, which was sold in the home market. Moreover, Allied Tube claims that the record does not contain substantial evidence to support Commerce's conclusion that import duties were paid on inputs used in production for home market sales.

Commerce maintains that it properly applied its standard two-prong test for granting a duty drawback adjustment and properly determined that Borusan Birlesik Boru Fabrikalari A.S. ("Borusan") satisfied the requirements of such test. Commerce maintains that it verified that Borusan paid duties upon inputs used in the production of merchandise sold domestically. Borusan adds that there is no additional requirement that a respondent show that it paid duties on other imported raw materials or that its home market price was based on a duty-inclusive cost.

## BACKGROUND

This matter concerns an administrative review of an antidumping duty order on certain welded carbon steel pipe and tube from Turkey, covering the period of review May 1, 2002 through April 30, 2003. See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 68 Fed. Reg 39,055 (July 1, 2003). On April 6, 2004, Commerce published its preliminary results. See Notice of Preliminary

Results of Antidumping Duty Administrative Review for Certain Welded Carbon Steel Pipe and Tube From Turkey ("Preliminary Results"), 69 Fed. Reg 18,049 (Apr. 6, 2004). For the Preliminary Results, Commerce compared the export price ("EP") to the normal value. See id. at 18,050. Commerce calculated EP by using the packed delivered price to unaffiliated purchasers in the United States as the starting price. See id. Commerce then made deductions from the starting price for: foreign inland freight, foreign brokerage and handling, international freight, marine insurance, and other related charges. See id. In addition, Commerce added duty drawback to the starting price. See id. In its comments to Commerce on the Preliminary Results, Allied Tube argued that Borusan was not entitled to a duty drawback adjustment. Borusan failed to provide evidence that it paid duties upon inputs used to produce the foreign like product sold in the home market. See Pls.' App. Tab 8 at 3. On August 11, 2004, Commerce published its Final Results. See Final Results, 69 Fed. Reg. at 48,843. Commerce found that Borusan had paid import duties upon inputs used to produce subject merchandise for sales in Turkey. See Issues & Decision Mem.[1] at 5-6. Allied Tube now challenges Commerce's

---

[1] The full title of this document is Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review for Certain Welded Carbon Steel Pipe and Tube From Turkey, and was adopted by the Final Results, 69 Fed. Reg. at 48,844 (generally accessible on the internet at http://ia.ita.doc.gov/frn/summary/turkey/04-18393-1.pdf). The Court will refer to this

decision to grant Borusan a drawback adjustment.  Oral arguments were heard by the Court on April 27, 2005.


## JURISDICTION

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a(a) (2000) and 28 U.S.C. § 1581(c) (2000).


## STANDARD OF REVIEW

In reviewing a challenge to Commerce's final determination in an antidumping administrative review, the Court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(I) (2000).

## I.   Substantial Evidence Test

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two

_____

document as Issues & Decision Mem. and match pagination to the printed documents provided by Allied Tube. See e.g., Pls.' App. at Tab 2.

inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) (citations omitted). Moreover, "the court may not substitute its judgment for that of the [agency] when the choice is 'between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" Am. Spring Wire Corp. v. United States, 8 CIT 20, 22, 590 F. Supp. 1273, 1276 (1984) (quoting Penntech Papers, Inc. v. NLRB, 706 F.2d 18, 22-23 (1st Cir. 1983) (quoting, in turn, Universal Camera, 340 U.S. at 488)).

## II. Chevron Two-Step Analysis

To determine whether Commerce's interpretation and application of the antidumping statute is "in accordance with law," the Court must undertake the two-step analysis prescribed by Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Under the first step, the Court reviews Commerce's construction of a statutory provision to determine whether "Congress has directly spoken to the precise question at issue." Id. at 842. "To ascertain whether Congress had an intention on the precise question at issue, [the Court] employ[s] the 'traditional tools of statutory construction.'" Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998) (citing Chevron, 467

U.S. at 843 n.9). "The first and foremost 'tool' to be used is the statute's text, giving it its plain meaning. Because a statute's text is Congress' final expression of its intent, if the text answers the question, that is the end of the matter." Id. (citations omitted). Beyond the statute's text, the tools of statutory construction "include the statute's structure, canons of statutory construction, and legislative history." Id. (citations omitted); but see Floral Trade Council v. United States, 23 CIT 20, 22 n.6, 41 F. Supp. 2d 319, 323 n.6 (1999) (noting that "not all rules of statutory construction rise to the level of a canon") (citation omitted).

If, after employing the first prong of Chevron, the Court determines that the statute is silent or ambiguous with respect to the specific issue, the question for the Court becomes whether Commerce's construction of the statute is permissible. See Chevron, 467 U.S. at 843. Essentially, this is an inquiry into the reasonableness of Commerce's interpretation. See Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996). Provided Commerce has acted rationally, the Court may not substitute its judgment for the agency's interpretation. See Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (holding that "a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another"); see also

IPSCO, Inc. v. United States, 965 F.2d 1056, 1061 (Fed. Cir. 1992). The "Court will sustain the determination if it is reasonable and supported by the record as a whole, including whatever fairly detracts from the substantiality of the evidence." Negev Phosphates, Ltd. v. United States, 12 CIT 1074, 1077, 699 F. Supp. 938, 942 (1988) (citations omitted). In determining whether Commerce's interpretation is reasonable, the Court considers the following non-exclusive list of factors: the express terms of the provisions at issue, the objectives of those provisions, and the objectives of the antidumping scheme as a whole. See Mitsubishi Heavy Indus. v. United States, 22 CIT 541, 545, 15 F. Supp. 2d 807, 813 (1998).

## DISCUSSION

### I. Borusan Is Not Required to Show Payment of Duties Upon Inputs Used to Produce Merchandise Sold in the Home Market

Under 19 U.S.C. § 1677a(c)(1)(B) (2000), an importer is entitled to an upward adjustment to EP for import duties that are "imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States." Id. A duty drawback adjustment is meant to prevent dumping margins that arise because the exporting country rebates import duties and taxes that it had imposed on raw materials used to produce merchandise that is

subsequently exported. See <u>Hornos Electricos de Venezuela, S.A. v. United States</u> ("<u>HEVENSA</u>"), 27 CIT ___, ___, 285 F. Supp. 2d 1353, 1358 (2003); <u>see also</u> <u>Far East Mach. Co. v. United States</u>, 12 CIT 428, 430, 688 F. Supp. 610, 611 (1988). To determine if a duty drawback adjustment is warranted, Commerce has employed a two-prong test which determines whether: (1) the rebate and import duties are dependent upon one another, or in the context of an exemption from import duties, if the exemption is linked to the exportation of the subject merchandise; and (2) the respondent has demonstrated that there are sufficient imports of the raw material to account for the duty drawback on the exports of the subject merchandise. See <u>HEVENSA</u>, 27 CIT at ___, 285 F. Supp. 2d at 1358. In claiming a favorable duty drawback adjustment to EP, Borusan bears the burden of demonstrating that both prongs of Commerce's test have been satisfied. See <u>Allied Tube & Conduit Corp. v. United States</u>, 25 CIT 23, 29, 132 F. Supp. 2d 1087, 1093 (2001). The Court finds that Commerce properly applied its two-prong test in determining that Borusan sufficiently established that it was entitled to a favorable duty drawback adjustment.

The Court agrees with Commerce's assertion that "this Court has rejected explicitly plaintiffs' contention that, as a prerequisite to receiving duty drawback, a company must demonstrate the payment of duties upon raw materials used to produce

merchandise sold in the home market." Def.'s Mem. Opp'n Pls.' R. 56.2 Mot. J. Upon Agency R. ("Commerce's Mem.") at 12 (citing Avesta Sheffied, Inc. v. United States, 17 CIT 1212, 1215, 838 F. Supp. 608, 611 (1993); Chang Tieh Indus. Co., Ltd. v. United States, 17 CIT 1314, 1320, 840 F. Supp. 141, 147 (1993). Similar to Allied Tube's argument in the case at bar, the plaintiff in Avesta Sheffield, 17 CIT at 1215, 838 F. Supp. at 611, argued that Commerce improperly allowed a duty drawback adjustment without first determining whether the foreign market value was duty inclusive. See id. The Court, however, held that the "statute provides for the duty drawback adjustment without reference to any finding that the home market price is reflective of duties." Id. The Court addressed the very same argument, in Chang Tieh, 17 CIT at 1320, 840 F. Supp. at 147, and added that requiring Commerce to determine whether the cost of merchandise in the home market includes duties paid "would add a new hurdle to the drawback test that is not required by the statute." Id. The clear language of 19 U.S.C. § 1677a(c)(1)(B) does not require an inquiry into whether the price for products sold in the home market includes duties paid for imported inputs. See Timex, 157 F.3d at 882 ("Because a statute's text is Congress' final expression of its intent, if the text answers the question, that is the end of the matter.") (citations omitted).

Allied Tube contends that Commerce failed to follow its past practice. See Br. Pls. Supp. R. 56.2 Mot. J. Agency R. ("Allied Tube's Br.") at 8-14. Allied Tube notes that, in Notice of Final Determination of Sales at Less Than Fair Value for Silicomanganese from Venezuela, 67 Fed. Reg 15,533 (Apr. 2, 2002), Commerce considered and denied a claimed drawback adjustment based on facts similar to those in the present action. See Allied Tube's Br. at 9 (citing HEVENSA, 27 CIT at___, 285 F. Supp. 2d at 1360). The respondent, Hevensa, took part in a program under which it was exempt from paying import duties on certain imports used to produce subject merchandise that was subsequently exported. See id. Commerce found that Hevensa had not sufficiently established that it paid import duties on inputs used to produce subject merchandise sold in the home market. See id. Allied Tube asserts that, in HEVENSA, this Court upheld Commerce's determination as being consistent with past practice. See id. The Court noted that Hevensa's inability to show that duties were paid on the importation of inputs used for domestic sales but not for export sales defeated its duty drawback claim. See Allied Tube's Br. at 9 (citing HEVENSA, 27 CIT at ___, 285 F. Supp. 2d at 1360).

Allied Tube further argues that the facts of Hevensa are similar to those involved in the case at bar. See id. In both cases, the respondents participated in a government exemption

program.  See id.  Allied Tube asserts that Borusan, like Hevensa, failed to demonstrate and quantify the amount of import duties paid on inputs used to produce merchandise sold in the home market.  See id. at 10.  Therefore, Allied Tube contends that Commerce's grant of a duty drawback adjustment to Borusan is improper because Commerce did not provide sufficient reasons for treating similar situations differently.  See id.  Commerce must explain why it chose to change its methodology and demonstrate that such change is in accordance with law and supported by substantial evidence.  See id.  The Court, however, finds that, contrary to Allied Tube's argument, HEVENSA, 27 CIT at ___, 285 F. Supp. 2d at 1358-60, does not impose a requirement that Borusan prove that it paid port duties upon inputs used in the home market.

In HEVENSA, the respondent claimed that duties were payable absent exportation and Commerce requested additional information to determine whether Hevensa had satisfied the first prong of the duty drawback test.  See id.  Commerce denied the claimed duty drawback adjustment because Hevensa had failed to demonstrate whether it paid duties upon importation of raw materials or whether duties were paid if it failed to export a specified quantity of finished merchandise.[2]  See id.  In the case at bar, Boursan reported to

---

[2]     HEVENSA involved a request by Commerce for additional information to support Hevensa's assertion that import duties were payable absent exportation.  See HEVENSA, 27 CIT at ___, 285 F.

Commerce that it would have to pay import duties on certain raw materials used to produce the subject merchandise if it failed to export such merchandise to the United States. See Section B, C & D Response of the Borusan Group in the 2002-2003 Antidumping Administrative Review Involving Certain Welded Carbon Steel Standard Pipe from Turkey, Pls.'s App. at Tab 6 at 29-30.

Unlike the respondent in HEVENSA, Borusan provided Commerce with information and an explanation of the exporting country's duty drawback exemption program in effect during the relevant period of review. See id. Consequently, Commerce did not request additional information to determine whether Borusan paid duties upon importation of raw materials or paid duties if it failed to export subject merchandise to the United States. Accordingly, contrary to Allied Tube's assertion, the Court in HEVENSA did not create a separate, third prong to the duty drawback test. Rather, the Court affirmed the first prong of Commerce's test whereby a party seeking

---

Supp. 2d at 1359-60. Commerce rejected Hevensa's claimed duty drawback adjustment for two reasons: "First, Commerce explained that although [Hevensa] 'described the duty drawback program in which it participated as an "exemption program," the regulations it provided in its original questionnaire response described a "refund program."' Second, Commerce charged that [Hevensa] 'failed to provide certain documentation requested by [Commerce]'" HEVENSA, 27 CIT at __, 285 F. Supp. 2d at 1359 (internal citations omitted). Accordingly, Commerce determined that Hevensa had not satisfied the first prong of its test because it was unclear whether the rebate and import duties were dependent upon one another or, alternatively, if Hevensa's claimed exemption from duties was linked to the exportation of the subject merchandise. See id.

a duty drawback adjustment must demonstrate that either rebate and import duties are dependent on one another, or that exemption from import duties is linked to exportation of the subject merchandise.

**II.  Commerce Properly Granted Borusan a Duty Drawback Adjustment**

Allied Tube also contends that prices in the home market and the United States were reported on an equal basis prior to the granting of a duty drawback adjustment.  See Allied Tube's Br. at 13.  Allied Tube argues that Borusan did not pay any import duties on raw materials used to produce subject merchandise for the home market and, therefore, "there is nothing for the [duty drawback] exemption or rebate to offset."  Id.  Accordingly, the duty drawback adjustment Commerce granted to Borusan violated the statute and Congressional intent because such adjustment did not offset import duties included in home market sales.  See id. at 14. Allied Tube maintains that none of the exhibits produced by Borusan at verification support a finding that it paid customs duties on imported inputs.  See id.  While Borusan provided Commerce a payment ledger, the payment reflected therein represented a small fraction of the 22.5 percent duty for hot-rolled steel which Borusan would have been required to pay.  See id. at 15.  In its questionnaire response, Borusan submitted that duties on inputs used to produce the subject merchandise were exempted because the raw materials were to be used to produce merchandise for export to

the United States. See id. at n.4. Allied Tube argues that record evidence suggests that the charge Borusan paid was not an import duty. See id. at 16. Allied Tube asserts that the record lacks substantial evidence to support the size of the granted adjustment even if the payment by Borusan is deemed to be for import duties. See id.

Commerce and Borusan assert that it fulfilled the requirements of the two-prong duty drawback test. See Commerce's Mem. at 15-19; Br. Def.-Intervenor Borusan Opp'n Pls.' R. 56.2 Mot. J. Agency R. ("Borusan's Br.") at 24-28. Commerce maintains that Borusan demonstrated that the "relevant import duties and rebates were directly linked and dependent upon one another . . . ." Id. at 15. Furthermore, Commerce tied the payment of such duties to Borusan's general ledger account for customs duties paid. See id. at 16. Borusan indicated in its questionnaire responses that it would have been required to pay import duties on the imported inputs if it had not exported the completed product to the United States. See id. Commerce notes that Allied Tube "acknowledges that the customs form contains a duty amount linking the commercial invoice and a duty for coil of 22.5 percent." Id. at 18. Commerce argues that it exercised its discretion and verified payments of duties for inputs used for domestic production by comparing domestic sales to Borusan's domestic duty payment ledgers. See id. at 17. Commerce

also asserts that it weighed the record evidence and found that the Turkish drawback system was reliable. See id. at 19. Borsuan adds that it provided evidence that it did pay "duties on imported raw materials when it imported more raw material than it was permitted to import duty free under its duty drawback license." Borusan's Br. at 13. Borusan asserts that Commerce verified this information and found that Borusan paid import duties on imported inputs in certain instances. See id.

The Court finds that Commerce's determination to grant Borusan a duty drawback adjustment is supported by substantial record evidence and in accordance with law. Commerce verified Borusan's claim for a duty drawback adjustment and "tied commercial invoices to customs declaration forms. [Commerce] tied the amount of duties owed as shown on the customs declaration form to Borusan's general ledger account for customs duty paid." Verification of Sales and Cost Data Submitted by the Borusan Group, Pls.' App. at Tab 7 at 12. At verification, Borusan provided a payment ledger which Commerce found indicated that Borusan paid customs duties and other taxes and charges. Based upon record evidence, Commerce found that Borusan paid import duties of 22.5 percent for certain raw material used in domestic production of the subject merchandise. See id. Consequently, Commerce reasonably determined that the Turkish duty drawback system was reliable and that the relevant import duties

and rebates were directly linked and dependent upon one another, thereby satisfying the first prong of the duty drawback test.  See Issues & Decision Mem. at 5; see also Consolo, 383 U.S. at 620 (stating that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence"). Commerce's determination that Borusan demonstrated that there were sufficient imports of the raw material to account for the duty drawback on the exports of the manufactured product was also reasonable.  Accordingly, the Court finds that Commerce properly determined that Borusan was entitled to a favorable duty drawback adjustment to its EP.

## CONCLUSION

The Court finds that the statute is clear on its face and Commerce is not required to find that the costs of the subject merchandise sold in the home market includes import duties. Moreover, the Court finds that Commerce's determination that Borusan satisfied both prongs of its standard two-prong test for duty drawback adjustments was supported by substantial evidence and in accordance with law.  Therefore, Allied Tube's USCIT R. 56.2 motion is denied and Commerce's determination to grant Borusan a

duty drawback adjustment to its EP is affirmed.  Judgment will be entered accordingly.


                                          /s/ Nicholas Tsoucalas
                                        NICHOLAS TSOUCALAS
                                          SENIOR JUDGE


Dated:     May 12, 2005
           New York, New York