**Slip Op. 05-163**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

<table>
<tr><td>
SHAKEPROOF ASSEMBLY COMPONENTS<br>
DIVISION OF ILLINOIS TOOL WORKS,<br>
INC.,<br><br>
                Plaintiff,<br><br>
                v.<br><br>
UNITED STATES,<br><br>
                Defendant,<br><br>
                and<br><br>
HANG ZHOU SPRING WASHER CO.,<br>
LTD.,<br><br>
                Defendant-<br>
                Intervenor.
</td><td>
Before: Richard W. Goldberg,<br>
       Senior Judge<br><br>
Court No. 05-0404
</td></tr>
</table>

<u>OPINION</u>

[Commerce's partial consent motion for voluntary remand granted.]

Dated: December 22, 2005

<u>McDermott, Will & Emery, LLP</u> (<u>David John Levine</u>) for Plaintiff Shakeproof Assembly Components Division of Illinois Tool Works, Inc.

<u>Peter D. Keisler</u>, Assistant Attorney General; <u>David M. Cohen</u>, Director; <u>Patricia M. McCarthy</u>, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>David Samuel Silverbrand</u>); <u>Ada Bosque</u>, Office of the Chief Counsel, U.S. Department of Commerce, for Defendant United States.

<u>White & Case, LLP</u> (<u>Adams Chi-Peng Lee</u> and <u>Emily Lawson</u>) for Defendant-Intervenor Hang Zhou Spring Washer Co., Ltd.

GOLDBERG, Senior Judge: This case is before the Court on a partial consent motion for voluntary remand of the final results of an administrative review of an antidumping duty order by the U.S. Department of Commerce (**"Commerce"**).

## I. BACKGROUND

In Certain Helical Spring Lock Washers from the People's Republic of China, 70 Fed. Reg. 28274 (Dep't Commerce May 17, 2005) (final determination) (the **"Final Results"**), Commerce determined that the weighted average dumping margin on sales of helical spring lock washers (the **"subject imports"**) to the United States by the Chinese respondent, Hang Zhou Spring Washer Co., Ltd. (**"Defendant-Intervenor"**), was 0.00 percent of the adjusted U.S. price for the subject imports as determined by Commerce. Final Results at 28274. This resulted in calculation of an antidumping duty rate of the same percentage. Id.

To reach this conclusion, it was necessary for Commerce to value the factors of production associated with the subject imports in order to calculate their normal value.[1] Id. at 28275;

---

[1] Normal value is a critical variable in antidumping calculations. It is intended to represent the price at which subject imports are first sold in their home market (or, where necessary, a comparable market). See 19 U.S.C. § 1677b(a)(1)(A)-(C) (1999). For antidumping investigations involving imports from non-market economies, like the People's Republic of China, Commerce may determine normal value by looking to the cumulated value of the factors of production associated with the subject imports. Id. § 1677b(c)(1). Once calculated, the normal value of subject imports is compared with their export price (or, where necessary, their constructed

see also Defendant's Partial Consent Motion for a Voluntary
Remand (**"Commerce's Mot."**) at 1. One such factor of production
under consideration by Commerce was the value of so-called
"plating services." Id. Commerce performed the same plating
services valuation in both the preliminary results and the Final
Results. Id.; see also Certain Helical Spring Lock Washers from
the People's Republic of China, 69 Fed. Reg. 64903, 64905 (Dep't
Commerce Nov. 9, 2004) (preliminary determination); Defendant-
Intervenor's Opposition to Defendant's Motion for Voluntary
Remand (**"Def.-Int.'s Opp."**) at 2. Although provided the
opportunity to do so, the domestic petitioner, Shakeproof
Assembly Components Division of Illinois Tool Works, Inc.
(**"Plaintiff"**), did not object to Commerce's plating services
valuation in its comments on the preliminary results or case
brief to the agency. Final Results at 28275.[2]

Following publication of the Final Results, Plaintiff
commenced this action by filing a summons with the Court on June
16, 2005. The next day, Plaintiff also timely filed with
Commerce a request to correct certain "ministerial errors"

---

export price) to determine if the subject imports are being sold
at less than fair value (or dumped) in the United States.
Id. § 1677b(a).

[2] Rather, it was Defendant-Intervenor who raised several
objections to Commerce's calculation of normal value, which
Plaintiff affirmatively defended as "in accordance with law and
substantially supported by evidence." Final Results at 28275.

purportedly made in the calculation of the dumping margin for Defendant-Intervenor. See Complaint dated July 15, 2005 (**"Compl."**) ¶ 6. Specifically, Plaintiff alleged that Commerce had valued the plating services factor of production erroneously, leading to a flawed normal value calculation and thus an incorrect dumping margin. Id. Plaintiff argued that, while Commerce had applied the correct plating price, it did so to the wrong weight value (i.e., Commerce applied the price to each kilogram of raw plating materials instead of each kilogram of lock washers). Id. ¶ 7. As proof of the mistake, Plaintiff noted that Commerce had "correctly applied" the plating price derived from the same source document in the previous administrative review of the same antidumping duty order. Id.

Commerce denied Plaintiff's request to correct the Final Results on July 8, 2005, concluding that Plaintiff's allegations "pertain[ed] to a methodological rather than ministerial issue" and were therefore not subject to correction using the ministerial error procedure.[3] Id. ¶ 10 (quoting Mem. to Edward C. Yang from Wendy J. Frankel, Re: Antidumping Duty Review of Certain Helical Spring Lock Washers from the People's Republic

_____

[3] Exercised shortly after publication of a final determination, Commerce's ministerial error procedure is intended to give parties the opportunity to bring to the agency's attention any "errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the like, and any other type of unintentional error which [Commerce] considers ministerial." 19 U.S.C. § 1675(h) (1999).

of China – Ministerial Error Allegations in Final Results, dated July 8, 2005).  Three days later, on July 11, 2005, "senior Commerce officials discussed with counsel for [Plaintiff] . . . a course of action whereby, following the filing of a complaint, Commerce would move this Court for a 'voluntary remand' in order for Commerce to reconsider its decision."  Compl. ¶ 11. Although described in Plaintiff's complaint, this ex parte communication was not documented on the administrative record. However, two other conversations which took place on that same day were made part of the record: a senior Commerce official was contacted separately by staff members from the offices of Senator Herb Kohl and Congresswoman Gwen Moore regarding Commerce's ministerial error determination.  See Mem. to File from Susan Kuhbach, Acting Assistant Secretary, Import Administration, Re: Phone Conversation Regarding Ministerial Errors Memorandum, dated July 11, 2005.  Specifically, the Congressional staffers sought a delay in Commerce's ministerial error determination to permit Plaintiff additional time to meet with the agency.  Id.  The Commerce official advised the Congressional staffers that this determination had in fact already been issued, and that the agency "did not view the issue as a ministerial error; and that if there was a possible methodological error, the only way for [Commerce] to consider it at this point would be if [Commerce] were sued."  Id.

Plaintiff filed its complaint four days later, on July 15, 2005.  The sole issue raised in the complaint concerned the allegedly erroneous valuation of the plating services factor of production and Commerce's failure to correct it through the ministerial error procedure.  Compl. ¶ 12.  On October 13, 2005, Commerce filed a motion requesting voluntary remand of the Final Results.  Commerce's Mot. at 1.  In its motion, Commerce did not admit error in the Final Results; rather, Commerce requested remand to enable the agency to "examine the methodologies available to value plating to discern which methodology leads to the most accurate results and explain its choice of methodology employed."  Id. at 2.  In its motion, Commerce also indicated that it would possibly seek additional information to augment its inquiry on this issue.  Id.  Plaintiff filed a brief supporting Commerce's request for voluntary remand on November 8, 2005.  See Plaintiff's Response in Support of Defendant's Partial Consent Motion for Voluntary Remand (**"Pl.'s Resp."**) at 1.  Defendant-Intervenor filed its brief in opposition on the same day.  Def.-Int.'s Opp. at 1.

## II. JURISDICTION AND JUSTICIABILITY

Pursuant to 28 U.S.C. § 1581(c), the Court has jurisdiction over cases involving appeals of the final results of administrative reviews performed by Commerce in the context of antidumping proceedings.  Before exercising this jurisdiction in

a given case, however, the Court is directed by statute to require the exhaustion of administrative remedies "where appropriate[.]"  28 U.S.C. § 2637(d) (1999).  Mindful of this prudential consideration, the Court believes that there is a question as to whether Plaintiff's failure to contest the valuation of plating services in response to Commerce's preliminary results should give rise to partial dismissal of this action for failure to exhaust.  Nonetheless, after careful consideration, the Court concludes that dismissal is not warranted as to Plaintiff's claim of error in the Final Results.

Exhaustion is required principally because "[a] reviewing court usurps the agency's function when it sets aside a determination upon a ground not previously presented and deprives the agency of an opportunity to consider the matter, make its ruling, and state the reasons for its action."  Wieland Werke, AG v. United States, 13 CIT 561, 567, 718 F. Supp. 50, 55 (1989).  As a result of these concerns, the Court has generally declined to exercise jurisdiction over a claim involving methodological objections raised to Commerce only during the ministerial error procedure following a final determination.  See, e.g., Tianjin Mach. Imp. & Exp. Corp. v. United States, 28 CIT ___, ___, 353 F. Supp. 2d 1294, 1306-07 (2004), aff'd, Appeal No. 05-1077 (Fed. Cir. Oct. 11, 2005); Peer Bearing Co. v. United States, 23 CIT 454, 457-60, 57 F. Supp. 2d 1200, 1204-

06 (1999); Aramide Maatschappij V.o.F. v. United States, 19 CIT 1094, 1097-98, 901 F. Supp. 353, 357-58 (1995).  Nevertheless, the Court has found it appropriate to exercise jurisdiction under such facts where Commerce itself has voiced support for the belated claim by requesting voluntary remand.  See, e.g., Magnesium Corp. of Am. v. United States, 20 CIT 1092, 1104-05, 938 F. Supp. 885, 898 (1996), aff'd, 166 F.3d 1364 (Fed. Cir. 1999); Ad Hoc Comm. of S. Cal. Producers of Gray Portland Cement v. United States, 19 CIT 1398, 1403-04, 914 F. Supp. 535, 541-42 (1995); Sugiyama Chain Co. v. United States, 16 CIT 526, 533-35, 797 F. Supp. 989, 996-97 (1992).

Although the Court's rationale for this past exercise of jurisdiction has not been fully articulated, the Court has noted in other contexts that it "may exercise its discretion to prevent knowingly affirming a determination with errors." Torrington Co. v. United States, 21 CIT 1079, 1082 (1997). Likewise, where Commerce raises serious concerns about the accuracy of a determination through a request for voluntary remand, the Court may exercise its discretion with regard to the exhaustion of administrative remedies in order to subject to review a potentially erroneous administrative determination. Cf. Civil Aeronautics Board v. Delta Air Lines, Inc., 367 U.S. 316, 321 (1961) (in weighing reconsideration request, noting significance of "the public interest in reaching what,

ultimately, appears to be the right result"). The desire to achieve accuracy in an administrative determination seriously questioned by Commerce before the Court, combined to a lesser extent with the fact that recourse to the ministerial error procedure does provide Commerce with at least some opportunity to consider and rule on an objection at the administrative level, supports the Court's exercise of jurisdiction over a substantive claim raised only as ministerial error. See Consol. Bearings Co. v. United States, 348 F.3d 997, 1003 (Fed. Cir. 2003) (noting Court's "discretion to identify circumstances where exhaustion of administrative remedies does not apply").

In light of the foregoing, the Court concludes that it would be inappropriate to require strict exhaustion of administrative remedies to Plaintiff's claim of error in the Final Results. As discussed in detail infra at Part IV.A-B, the Court has determined that Commerce's request for voluntary remand is based on a substantial and legitimate concern about a certain aspect of the Final Results. Commerce's concern is sufficiently serious to call into question the accuracy of this determination. In order to correct the very real possibility of an inaccuracy in the Final Results, and in light of Plaintiff's recourse to at least the ministerial error procedure, the Court in its sound discretion chooses to exercise jurisdiction over Plaintiff's claim and consider Commerce's corresponding request

for voluntary remand.

### III. STANDARD OF REVIEW

Turning to its review of the merits of that request, the Court notes that, "[d]ue to the tripartite nature of a case like this, remand is not the automatic result of government acquiescence therein."  Brother Indus., Ltd. v. United States, 15 CIT 332, 344, 771 F. Supp. 374, 386 (1991).  Rather, in SKF USA Inc. v. United States, 254 F.3d 1022 (Fed. Cir. 2001), the U.S. Court of Appeals for the Federal Circuit (the **"Federal Circuit"**) discussed the appropriate standard of review to apply to an agency's motion for voluntary remand of an administrative determination.[4]  There, the Federal Circuit distinguished among the various types of voluntary remand situations which could

---

[4] Defendant-Intervenor contends that SKF is not applicable to this case, Def.-Int.'s Br. at 6, because, unlike SKF, Commerce's "remand request is not being made so it may confer a benefit on the parties paying duties."  Id. at 5.  In the Court's view, this factual distinction does not preclude reference to SKF for the appropriate standard of review.  The SKF court described general legal principles concerning the obligations of a court charged with reviewing agency actions and evaluating agency litigation positions.  There is no indication that the SKF court intended for these review standards to vary based on the specific factual distinction noted by Defendant-Intervenor, see Corus Staal BV v. United States, 27 CIT ___, ___, 259 F. Supp. 2d 1253, 1257 (2003) (questioning equal treatment of remands benefiting petitioners and respondents but nonetheless applying SKF standard of review framework), aff'd, 395 F.3d 1343 (Fed. Cir. 2005), nor does this Court believe that such variance is warranted.

arise.  See SKF, 254 F.3d at 1027-30.  Where, as here,[5] the situation entails "no intervening events"[6] but the agency nonetheless requests "a remand (without confessing error) in order to reconsider its previous position[,]" the Federal Circuit indicated that a "reviewing court has discretion over whether to remand."  Id. at 1029.  The SKF court further noted that remand is generally appropriate "if the agency's concern is substantial and legitimate[,]" but may be refused "if the agency's request is frivolous or in bad faith."  Id.

### IV. DISCUSSION

Defendant-Intervenor objects to Commerce's request for voluntary remand on a number of grounds.  Initially, Defendant-Intervenor argues that Commerce has not articulated a substantial and legitimate basis for remand in accordance with the SKF standard.  Def.-Int.'s Br. at 6.  Because Commerce "has not specifically apprised the Court of [sic] whether the reason for remand is an error or change in methodology[,]" Defendant-Intervenor contends that Commerce has provided insufficient

---

[5] Plaintiff contends that "Commerce acknowledges that it erred[,]" Pl.'s Resp. at 1, which, if true, would require the Court to apply a somewhat different standard of review to the voluntary remand request under the SKF framework.  However, the Court can find no support for Plaintiff's assertion in Commerce's remand request.  Rather, in the Court's view, Commerce made clear its "wish[] to reconsider its position 'without confessing error.'"  Commerce's Mot. at 2 (quoting SKF, 254 F.3d at 1029).

[6] Examples of intervening events include "a new legal decision or the passage of new legislation."  SKF, 254 F.3d at 1028.

justification for voluntary remand.  Id.  Defendant-Intervenor next argues that the need for finality in administrative proceedings militates against voluntary remand here.  Id. at 7. Defendant-Intervenor notes that the statute and regulations governing antidumping proceedings already provided Plaintiff with ample opportunity to raise its objections to the plating services valuation.  Id. at 7-8.  Defendant-Intervenor argues that voluntary remand would unfairly allow Plaintiff "a second bite of the apple" purely because Plaintiff was able to marshal enough domestic political pressure to force Commerce to reconsider an otherwise final result.  Id. at 8.  Lastly, Defendant-Intervenor contests the scope of Commerce's remand request.  Id. at 9.  Defendant-Intervenor contends that Commerce's stated intention to potentially reopen the record in connection with the requested remand is unwarranted, as Commerce collected sufficient information on plating services from both parties during the course of the proceedings below.  Id.

After careful consideration of Defendant-Intervenor's objections, particularly in light of the documented post-determination political maneuvering which took place in this case, the Court nonetheless decides for the reasons set forth below to grant the voluntary remand requested by Commerce.

**A.    The Need for Commerce to Explain an Apparent Departure from Past Practice Is a Compelling Concern Weighing in Favor of Voluntary Remand**

First, Commerce has provided a compelling justification for its remand request.  In support of its motion, Commerce explained that the Final Results were based in part on a methodology which differed from one previously used in a substantially similar antidumping proceeding.  Commerce's Mot. at 1-2.  Commerce applied this methodology without justifying this seemingly disparate treatment, id., apparently because an oversight prevented the agency from recognizing the availability of alternative methodologies.  Pl.'s Br. at 1; Compl. ¶ 8.[7]  It is an established principle of administrative law that an agency has a "duty to explain its departure from prior norms." Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade, 412 U.S. 800, 808 (1973).  Seeking consistency in antidumping proceedings, the Court has repeatedly applied this principle to determinations made by Commerce.  See, e.g., Allied Tube & Conduit Corp. v. United States, 29 CIT ___, ___, 374 F. Supp. 2d 1257, 1262 (2005) (noting that "Commerce must explain why it chose to change its methodology and demonstrate that such change is in accordance with law and supported by substantial evidence"); Hussey Copper, Ltd. v. United States, 17 CIT 993,

---

[7] The Court may consider the supporting justifications for voluntary remand provided by non-moving parties, in addition to those provided by the agency requesting remand.  Corus Staal, 27 CIT at ___, 259 F. Supp. 2d at 1257.

998, 834 F. Supp. 413, 419 (1993) (remanding because Commerce "failed to adequately articulate the reasons for its departure from its normal practice").

Viewed in this light, the justification for Commerce's motion for voluntary remand is persuasive.  Commerce (with Plaintiff's support) has sufficiently demonstrated to the Court that it likely did depart from a former methodology in the Final Results without explanation.[8]  If properly challenged on the merits, this type of agency action would likely provoke a court-ordered remand – i.e., the Court would require Commerce to "reconsider its previous position."[9]  SKF, 254 F.3d at 1029.  It is immaterial that Commerce has not specifically indicated "whether the reason for [the requested] remand is an error or change in methodology."  Def.-Int.'s Br. at 6.  Rather, the need for an agency to adequately address a seeming departure from past practice – irrespective of the cause of such departure – is

---

[8] Compare Ninth Review Preliminary Results Calculation Memorandum for Hangzhou, dated  Oct. 31, 2003, at 3 ("We multiplied this per kilogram surrogate value by the weight of the lock washer unit to value the plating process per unit."); Certain Helical Spring Lock Washers from the People's Republic of China, 69 Fed. Reg. 12119, 12121 (Dep't Commerce Mar. 15, 2004) (final determination) (adopting calculation memorandum methodology); with Final Results at 28275 (adopting different calculation of same surrogate value without explanation).

[9] The Court does not mean to imply that any agency action which might provoke the Court to remand a final determination is per se a compelling or persuasive justification for voluntary remand.  This is necessarily a case-by-case analysis.

itself a significant concern weighing in favor of voluntary

remand.[10]  Cf. Ugine-Savoie Imphy v. United States, 24 CIT 1246,

1252, 121 F. Supp. 2d 684, 690 (2000) (in preliminary injunction

context, noting that "public interest is served by ensuring that

[Commerce] complies with the law, and interprets and applies

[the] international trade statutes uniformly and fairly")

(quotation marks omitted).

**B.    Finality Concerns Do Not Outweigh the Otherwise Substantial
        and Legitimate Basis for Voluntary Remand in this Case**

Second, the need for finality – although an important

consideration – does not outweigh the justification for

voluntary remand presented by Commerce in this case.

"[C]oncerns for finality do exist[,]" Corus Staal, 27 CIT at

___, 259 F. Supp. 2d at 1257, and are properly weighed against

an agency's proffered rationale for voluntary remand in order to

determine if this rationale is in fact "substantial and

legitimate[.]"  SKF, 254 F.3d at 1029.  As Defendant-Intervenor

rightly notes, serious finality concerns in a given case could

call into question the legitimacy of an agency's remand request

and potentially give rise to an inference of bad faith.

However, such serious concerns do not exist here.

---

[10] Further, it is customary on initial remand to permit an agency
the choice between better explaining its departure and modifying
its determination to achieve conformity with past practice.  The
Court can conceive of no reason why this discretion should be
limited ex ante simply because the agency, rather than a
reviewing court, first identifies a potential problem in an
administrative determination.

As an initial matter, final determinations by Commerce in the antidumping arena are, for better or for worse, subject to routine appeal to this Court.  This is true despite the various opportunities to reach consensus on the administrative level, despite the delay engendered by such appeal, and despite the relative difficulty of likely "having to deal with two different [agency] determinations (i.e., the original final results and the remand results)."  Def.-Int.'s Br. at 7.  Notwithstanding Defendant-Intervenor's arguments to the contrary, this case is fairly typical of such an appeal: Plaintiff timely filed an action alleging non-frivolous objections to Commerce's determination which were previously raised in some form at the administrative level.  Had Defendant-Intervenor been particularly unhappy with the Final Results, there can be no reasonable doubt that it too would have followed this course of conduct.  See Hangzhou Spring Washer Co., Ltd. v. United States, 29 CIT ___, 387 F. Supp. 2d 1236 (2005) (remanding determination to agency for review of certain valuations to which importer objected).  In short, the procedural posture of this case does not present any unusually serious finality concerns.

However, this case is somewhat exceptional with respect to the documented political machinations which preceded Commerce's request to reconsider an otherwise final determination.  As the Court has previously observed in the voluntary remand context:

> [E]xperience has shown that the agency can be put in
> the unfortunate position of being requested by
> powerful domestic interests and Congress persons to
> alter positions to favor the domestic party.  The
> agency should be protected from such post-
> determination maneuvering as much as is possible, in
> order to avoid charges of bad faith decision-making
> and needless litigation.

Corus Staal, 27 CIT at ___ n.4, 259 F. Supp. 2d at 1257 n.4.  To

protect the finality of agency decisions in cases involving

post-determination political maneuvering, the Court exercises

caution before accepting as legitimate proffered justifications

for voluntary remand.

Here, the record evidence demonstrates a certain degree of

political interest in the Final Results; however, upon careful

examination, the Court concludes that this is not a case where

such interest appears to have completely driven the agency's

remand request.  Commerce was given an opportunity to consider

Plaintiff's objections in the administrative setting through the

ministerial error procedure, where the agency concluded that it

would be inappropriate to address Plaintiff's concerns.  In the

Court's view, this conclusion reflects a certain integrity in

the agency's decision-making process.  If Commerce had been

truly captured by the domestic industry's lobby, as intimated by

Defendant-Intervenor, it was within the agency's power to

mischaracterize Plaintiff's objections as ministerial errors (at

least a colorable argument under these facts) and seek leave

from the Court to redress them at the administrative level.  But

Commerce did not do that.  Instead, Commerce issued a decision contrary to Plaintiff.  Commerce was then contacted by domestic political interests; but, even here, the subject of those conversations belies an immediate inference of political pressure to request remand.  The memorandum summarizing these telephone calls indicates that Congressional staffers contacted Commerce in order to influence the timing of the agency's ministerial error determination, only to learn that this determination had already been issued.  The memorandum does not mention discussion of a potential voluntary remand request by Commerce or any other possible agency litigation position in the event of appeal to this Court.  As such, there is no direct evidence that Commerce was improperly pressured to reopen the Final Results through voluntary remand.

Of course, it is possible that other, off the record conversations took place between Commerce and political interests on the topic of voluntary remand.  "The [C]ourt is sensitive to the problems parties face in gathering specific proof of unlawful political suasion.  Such evidence, after all, is seldom highlighted on dog-earred [sic] pages of the administrative record."  Saha Thai Steel Pipe Co. v. United States, 11 CIT 257, 260, 661 F. Supp. 1198, 1202 (1987).  Nonetheless, there exists a "presumption of governmental good faith" in administrative proceedings.  United States v. Roses,

Inc., 706 F.2d 1563, 1566 (Fed. Cir. 1983). The Court will not abandon this presumption absent a strong evidentiary showing, sometimes characterized as "well-nigh irrefragable proof" of bad faith. Kalvar Corp. v. United States, 543 F.2d 1298, 1301-02 (Ct. Cl. 1976).[11] Here, while there is evidence that one ex parte conversation took place off the record,[12] this alone is not "tantamount to [the] showing of malice or conspiracy" against Defendant-Intervenor that would be necessary to rebut the presumption of governmental good faith. Id., 543 F.2d at 1302.

At best, Defendant-Intervenor has demonstrated the mere possibility that Commerce may have been improperly motivated to seek voluntary remand of an otherwise final agency determination. Against this possibility, the Court must weigh the justification for voluntary remand advanced by Commerce. As previously noted, the Court finds this justification compelling and, despite the ambiguous finality concerns raised by Defendant-Intervenor, concludes that this is a sufficiently

---

[11] "This is a decision of a predecessor court binding on [the Federal Circuit]." Roses, Inc., 706 F.2d at 1566.

[12] It is not entirely clear to the Court that the communication which took place between Commerce and Plaintiff after issuance of the Final Results and Commerce's ministerial error decision was strictly required to be memorialized and placed on the record. See 19 U.S.C. § 1677f(a)(3) (1999) (requiring Commerce to maintain records of ex parte communications which provide the agency with "factual information in connection with a proceeding"). The Court need not reach this question here. For purposes of the analysis of governmental good faith, it is enough to note that Commerce found it appropriate to place on the record other conversations which took place on the same day.

substantial and legitimate basis for remand.  Accordingly, the Court exercises its discretion to grant the remand request.

**C.   The Scope of Commerce's Remand Request is Appropriate**

Finally, the Court must consider whether the scope of Commerce's remand request is appropriate in light of the agency's stated intention to potentially reopen the administrative record in connection with its review.  Defendant-Intervenor is correct that Commerce solicited and collected from both parties valuation information on plating services during the course of the proceedings below.  Nevertheless, this prior data collection does not preclude Commerce from seeking additional information on remand.  The alternative, previously overlooked methodology for valuing plating services may very well require information that Commerce unwittingly failed to collect for purposes of the Final Results.  Further, the Federal Circuit has disfavored limited remands which restrict Commerce's ability to collect and fully analyze data on a contested issue. Am. Silicon Techs. v. United States, 334 F.3d 1033, 1038-39 (Fed. Cir. 2003).  "By sharply limiting Commerce's inquiry," the Court is concerned that, in this case, it may "actually prevent[] Commerce from undertaking a fully balanced examination[.]"  Id. at 1039.  Consequently, the Court concludes that the scope of Commerce's remand request, to include the ability to reopen the administrative record as to the single

contested issue of plating services valuation, is appropriate.

## V. CONCLUSION

For the foregoing reasons, Commerce's partial consent motion for voluntary remand is granted and a separate order will be issued accordingly.  Although granting the agency's motion, the Court remains troubled by what may be fairly characterized as the appearance (if not existence) of improper political influence on an administrative determination.  The Court will be watchful that Commerce's decision on remand is in fact supported by substantial evidence and in accordance with law.


                                    /s/ Richard W. Goldberg
                                    **Richard W. Goldberg**
                                    **Senior Judge**


Date:      December 22, 2005
           New York, New York