**Slip Op. 06-129**

## UNITED STATES COURT OF INTERNATIONAL TRADE

SHAKEPROOF ASSEMBLY COMPONENTS
DIVISION OF ILLINOIS TOOL WORKS,
INC.,                                        Before:   Richard W. Goldberg,
                                                       Senior Judge
            Plaintiff,
                                             Court No. 05-00404
            v.

UNITED STATES,

            Defendant,

            and

HANG ZHOU SPRING WASHER CO., LTD.,

            Defendant-Intervenor.

## OPINION

[Commerce's redetermination results sustained.]

Date: August 25, 2006

McDermott Will & Emery LLP (David J. Levine and Raymond Paul
Paretzky) for Plaintiff Shakeproof Assembly Components
Division of Illinois Tool Works, Inc.

Peter D. Keisler, Assistant Attorney General; David M. Cohen,
Director; Jeanne E. Davidson, Deputy Director, Commercial
Litigation Branch, Civil Division, U.S. Department of Justice
(David S. Silverbrand); Ada Bosque, Office of the Chief
Counsel, U.S. Department of Commerce, for Defendant the
United States.

White & Case LLP (William J. Clinton, Adams C. Lee, and Emily
Lawson) for Defendant-Intervenor Hang Zhou Spring Washer
Company, Ltd.

Goldberg, Senior Judge: In Shakeproof Assembly Components Division of Illinois Tool Works, Inc. v. United States, 29 CIT ___, 412 F. Supp. 2d 1330 (2005) (**"Shakeproof I"**), familiarity with which is presumed, the Court granted a partial consent motion for voluntary remand of the final results of an administrative review of an antidumping duty order by the U.S. Department of Commerce (**"Commerce"**). Commerce's redetermination is now pending before the Court, which has jurisdiction pursuant to 28 U.S.C. § 1581(c).

## I. BACKGROUND

Shakeproof Assembly Components Division of Illinois Tool Works, Inc. (**"Plaintiff"**) commenced this action to contest one aspect of Commerce's antidumping duty calculations in Certain Helical Spring Lock Washers from the People's Republic of China, 70 Fed. Reg. 28274 (Dep't Commerce May 17, 2005) (final results of administrative review) (the **"Final Results"**). Id. at ___, 412 F. Supp. 2d at 1332-33. In general terms, Plaintiff alleged that, in the Final Results, Commerce had employed without explanation a new and erroneous methodology to value a certain factor of production[1] involved

---

[1] For imports from non-market economies like the People's Republic of China, Commerce may look to the cumulated value of the imports' factors of production to determine the

in the making of helical spring lock washers (the **"subject**

**imports"**) by Hang Zhou Spring Washer Co., Ltd. (**"Defendant-**

**Intervenor"**) for sale into the United States during the

period of review.  Id.  Following initiation of this action,

Commerce moved the Court for a voluntary remand of the Final

Results to justify the use of its methodology or, if that was

not possible, to recalculate the antidumping duty based on a

justifiable methodology.  Id. at ___, 412 F. Supp. 2d at

1333.  The Court granted this motion.  Id. at ___, 412 F.

Supp. 2d at 1339.

On remand, Commerce explored in greater detail the

contested factor of production – so-called plating services –

and the agency's corresponding valuation methodology.  See

Final Results of Redetermination Pursuant to United States

Court of International Trade Remand Order (Dep't Commerce

imports' normal value.  See 19 U.S.C. § 1677b(c) (1999).  As
the Court has previously noted:

> Normal value is a critical variable in antidumping
> calculations.  It is intended to represent the price at
> which subject imports are first sold in their home market
> (or, where necessary, a comparable market).  See 19 U.S.C. §
> 1677b(a)(1)(A)-(C) (1999). . . . Once calculated, the normal
> value of subject imports is compared with their export price
> (or, where necessary, their constructed export price) to
> determine if the subject imports are being sold at less than
> fair value (or dumped) in the United States.  Id. §
> 1677b(a).

Shakeproof I, 29 CIT at ___, 412 F. Supp. 2d at 1332 n1.

June 19, 2006), available at http://www.ia.ita.doc.gov/

remands/05-163.pdf at 2 (**"Remand Results"**).  As in the Final

Results, Commerce established that plating services involved

the application of zinc plating or coating to the subject

imports during the production process.  Id. at 2-4.  Commerce

further established that, in valuing plating services in the

Final Results, Commerce had employed a methodology which

differed from the valuation methodology employed during the

immediately preceding administrative review of the subject

imports.  Id. at 1.  To resolve this discrepancy, Commerce

solicited information from Plaintiff and Defendant-Intervenor

regarding: the most appropriate way to value plating

services; the industry standard, if any, for such valuation;

and proposed surrogate values[2] to be used in valuing the

plating services performed on the subject imports.  Id. at 2.

---

[2] In valuing factors of production for imports from non-market
economies, Commerce is required to use, "to the extent
possible, the prices or costs of factors of production in one
or more market economy countries that are (A) at a level of
economic development comparable to that of the non-market
economy country, and (B) significant producers of comparable
merchandise."  19 U.S.C. § 1677b(c)(4) (1999).  In other
words, "the statutory provisions specifically authorize
Commerce to use surrogate countries to estimate the value of
the factors of production."  Shakeproof Assembly Components
Div. of Ill. Tool Works v. United States, 268 F.3d 1376, 1381
(Fed. Cir. 2001) (**"Shakeproof 2001"**).

In response, Plaintiff provided Commerce with letters from three industry experts stating that the standard industry practice was to provide a fixed price for plating services to be charged on the basis of the amount of lock washer to be coated, rather than on the basis of the amount of zinc coating used during the plating process (e.g., five rupees per each kilogram of lock washer coated, as opposed to five rupees per each kilogram of coating applied to the lock washers).  Id. at 5.  Plaintiff also provided a letter (with contact information) from Sudha Metal Finishers, an Indian company which supplied the price quote used as the surrogate value for plating services in the Final Results.  Id.  The letter stated that that price quote had been provided on a per kilogram of lock washers coated basis, not on a per kilogram of zinc coating used basis.  Id.  The letter further noted that the price quote used in the Final Results reflected Sudha Metal Finishers' prevailing rate for plating services during March 2003, within the period of review.  Id. at 10.  Plaintiff was unable to give additional details about the price quote, including the manner in which the quote was solicited, because the branch of Plaintiff's organization which had solicited the quote from Sudha Metal Finishers had ceased to operate in the region.  Id. at 5.

For its part, Defendant-Intervenor responded by providing three plating services price quotes from Indian companies for the period between March and April 2004, after the period of review.  Id. at 4.  Defendant-Intervenor also provided the contact information for these companies.  Id. at 6.  However, the manner in which the price quotes were solicited and the methodology by which the price quotes were to be applied (i.e., on a per kilogram of lock washer coated basis or a per kilogram of zinc coating used basis) were not expressly spelled out in Defendant-Intervenor's submission to Commerce.  Id.

From the information provided, Commerce made several determinations which altered the calculations in the Final Results.  First, recognizing that the price quote used in the Final Results had been applied on a per kilogram of zinc coating used basis, Commerce rejected this methodology for valuing plating services and instead adopted the methodology used in the immediately preceding review period.  Id. at 6, 15.  That is, Commerce determined that it was most appropriate to value plating services on a per kilogram of lock washer coated basis.  Id.  Both Plaintiff and Defendant-Intervenor supported this change in methodology in the Remand Results.

Second, Commerce evaluated the plating services valuation information placed on the record during both the original review and remand proceedings and determined that the price quote provided by Plaintiff and used in the Final Results was still the best surrogate value for plating services.  Id. at 6, 14-15.  That is, Commerce found the original price quote to be "the best available information" for valuing plating services, id. at 14, and thereby rejected the three additional price quotes supplied by Defendant-Intervenor during the remand proceedings.  Commerce justified this evidentiary choice by noting that: (1) the appropriate methodological application and means of solicitation of Defendant-Intervenor's price quotes were not clear from the record evidence, id. at 5-6, 12-13; (2) the appropriate methodological application and means of solicitation of Plaintiff's quote were established by record evidence, id., and (3) unlike Defendant-Intervenor's price quotes, Plaintiff's price quote was contemporaneous with the period of review, id. at 14.  As a result, Commerce revised its calculations in the Remand Results, resulting in a change in the antidumping duty rate "from 0.00 percent to 19.48 percent" for Defendant-Intervenor.  Id. at 15.

## II.  **STANDARD OF REVIEW**

The Court must sustain any determination, finding, or conclusion made by Commerce in the Remand Results unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i) (1999).

With respect to the substantial evidence requirement, the U.S. Supreme Court has defined this term to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (quotation mark omitted)).

With respect to the in accordance with law requirement, the Court must defer to an agency's reasonable construction of an ambiguous statute.  Allegheny Ludlum Corp. v. United States, 367 F.3d 1339, 1343 (Fed. Cir. 2004) (citing Chevron, U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984)).  Further, "the deference granted to the agency's interpretation of the statutes it administers extends to the methodology it applies to fulfill its statutory mandate."  GMN Georg Muller Nurnberg AG v. United States, 15 CIT 174, 178, 763 F. Supp. 607, 611 (1991) (citing, inter alia, Chevron, 467 U.S. at 844-45;

_Amer. Lamb Co. v. United States_, 785 F.2d 994, 1001 (Fed.
Cir. 1986)).

### III. DISCUSSION

While Plaintiff is predictably pleased with the _Remand Results_, Defendant-Intervenor objects to Commerce's revised valuation of plating services. Specifically, Defendant-Intervenor takes issue with Commerce's exclusive reliance on Plaintiff's quote as a surrogate value for the plating services factor of production. Defendant-Intervenor's Comments on the Department of Commerce Remand Determination (**"Def.-Int.'s Br."**) at 5-6. Defendant-Intervenor does not argue that the quote supplied by Plaintiff should not have been used. Rather, Defendant-Intervenor simply argues that its quotes also should have been included in Commerce's valuation of plating services because its quotes were: (1) intended to be applied on a per kilogram of lock washer coated basis, the methodology adopted by Commerce in the _Remand Results_, _id._ at 6-10; (2) as reliable and representative of the factor of production as Plaintiff's price quote used by Commerce in the _Remand Results_, _id._ at 15-17; and (3) no further outside the period of review than price quotes Commerce has used to value factors of production

in previous reviews of the subject imports and other past investigations, id. at 17-20.

Even assuming arguendo that Defendant-Intervenor's has proven (contrary to Commerce's findings) that its price quotes (1) clearly employed the methodology adopted by Commerce in the Remand Results and (2) were as representative and reliable as the price quote used in the Remand Results, the Court concludes that Commerce's valuation of the plating services factor of production using the record evidence most contemporaneous with the period of review was reasonable. Accordingly, for the reasons that follow, the Court sustains the Remand Results.

A.   COMMERCE'S VALUATION OF PLATING SERVICES IN THE REMAND RESULTS IS IN ACCORDANCE WITH LAW.

First, Commerce has an established practice of favoring surrogate values which are contemporaneous with the period of investigation or review under consideration, and the Court finds this practice to be in accordance with law.  To value a factor of production, Commerce must use the "best available information[.]"  19 U.S.C. § 1677b(c)(1)(B) (1999).  Congress has left to Commerce's discretion exactly what constitutes such information.  See Nation Ford Chem. Co. v. United States, 166 F.3d 1373, 1377-78 (Fed. Cir. 1999).  One of Commerce's established practices or methodologies for valuing

factors of production is to utilize and rely on credible surrogate values which are contemporaneous with the period of investigation or review.  See Import Administration Policy Bulletin No. 04.1, Non-Market Economy Surrogate Country Selection Process (2004), available at http://ia.ita.doc.gov/ policy/bull04-1.html ("In assessing data and data sources, it is the Department's stated practice to use investigation or review period-wide price averages, . . . [and] prices that are contemporaneous with the period of investigation or review . . . ."); see also Shandong Huarong Gen. Corp. v. Unites States, 25 CIT 834, 849, 159 F. Supp. 2d 714, 728 (2001) (noting that "Commerce's practice is to use surrogate value data that is contemporaneous with the period of review.").  In other words, Commerce believes that, when available in a reliable form representative of the factor of production in question, valuation information contemporaneous with a period of investigation or review generally constitutes the best information.  The reasonableness of this methodology is manifest: in an original investigation or administrative review, Commerce must establish the value of a factor of production for a specific time period in order to calculate the normal value of imports (and, in turn, their dumping margin) within that time period as accurately as

possible.  See 19 U.S.C. § 1677b(a)(1)(A) (1999) (instructing that normal value must be "the price . . . reasonably corresponding to the time of the sales used to determine the export price or constructed export price").  Commerce's reliance on valuation information from within that specific time period is clearly an appropriate means of fulfilling this statutory directive.  Commerce properly employed this reasonable methodology here.  See Remand Results at 14 (determining that "[Plaintiff's] price quote is the best available information because it is contemporaneous with this [period of review].").

Further, the Court rejects Defendant-Intervenor's contention that Commerce has varied this methodology across administrative reviews of the subject imports and other investigations without explanation or justification. Defendant-Intervenor observes that, in the immediately preceding administrative review of the subject imports, Commerce valued plating services using a price quote from outside the period of review.  Def.-Int.'s Br. at 18-19.  In addition, Defendant-Intervenor notes that Commerce has used post-review surrogate values in other investigations.  Id. at 19 (citing Folding Metal Tables and Chairs from the People's Republic of China, 71 Fed. Reg. 2905 (Dep't Commerce Jan. 18,

2006) (final determination); <u>Certain Cut-to-Length Carbon Steel Plate from Romania</u>, 65 Fed. Reg. 54208 (Dep't Commerce Sept. 7, 2000) (preliminary determination)).  Defendant-Intervenor argues that, if Commerce was previously willing to consider surrogate values from outside the period of review, it was methodologically aberrant for Commerce to reject similar valuation information in the <u>Remand Results</u>.  <u>Id.</u> Defendant-Intervenor contends that, under administrative law principles, Commerce was required to explain its departure from prior practice and the agency's failure to do so rendered the <u>Remand Results</u> not in accordance with law.  <u>Id.</u>

In the Court's view, Defendant-Intervenor confuses the result for the method.  Commerce applied the same methodology in its two most recent reviews of the subject imports; that is, for both reviews, the agency selected the most contemporaneous surrogate values available from the reliable record evidence to establish the value of plating services. The difference between the two reviews is not the result of a change in methodology by Commerce, but rather is attributable to inevitable variances in the composition of the two administrative records.  It is not always possible for Commerce to obtain reliable surrogate values from within the specific period of investigation or review under

consideration.[3]  When this occurs, Commerce makes appropriate

allowances and adjustments to available surrogate values in

order to best approximate factor of production values during

the period of investigation or review.[4]  However, when the

administrative record contains reliable surrogate values for

a factor of production from both within and without the

period of investigation or review, all other factors held

equal, Commerce consistently selects the most contemporaneous

information available to the agency.[5]  That is what occurred

---

[3] See Issues and Decision Memorandum for the Final Results of
Folding Metal Tables and Chairs from the People's Republic of
China, A-570-868 (Jan. 9, 2006), available at
http://ia.ita.doc.gov/frn/summary/prc/E6-498-1.pdf at 35
("While it would be ideal to have an international air
freight price quote from the [period of review], this
information is not publicly available and accessible to
[Commerce].").

[4] See Certain Cut-to-Length Carbon Steel Plate from Romania,
65 Fed. Reg. at 54210 ("Where any of the factor values were
from years other than [the period of review], we applied an
inflator or deflator, as appropriate, based on the consumer
price index so that all factor values would approximate
[period of review] costs.").

[5] See, e.g., Issues and Decision Memorandum for the 2003-2004
Antidumping Duty Administrative Review of Persulfates from
the People's Republic of China, A-570-847 (Feb. 6, 2006)
available at http://ia.ita.doc.gov/frn/summary/prc/E6-2088-
1.pdf at 17-18 (disregarding one surrogate value and
selecting another because the latter was "much more
contemporaneous with the [period of review]"); Issues and
Decision Memorandum for the Administrative Review of the
Antidumping Duty Order on Fresh Garlic from the People's
Republic of China, A-570-831 (June 13, 2005) available at

here, rendering the methodology employed by Commerce in the Remand Results consistent with the agency's past practice.

In addition, the Court is not persuaded by the alternative methodology advocated by Defendant-Intervenor. Defendant-Intervenor suggests that, where the record contains surrogate values from within and without the period of review, Commerce should employ an averaging methodology, Def.-Int.'s Br. at 19-20, whereby the outlying surrogate values are presumably adjusted to reflect market conditions during the period of investigation or review and combined with surrogate values from within the period of investigation or review. While not an impossible methodology to employ, Defendant-Intervenor offers no compelling reason[6] for why such

http://ia.ita.doc.gov/frn/summary/prc/E5-3048-1.pdf at 26 (employing same rationale for selection of surrogate value for factor of production).

[6] Defendant-Intervenor suggests that because "[Plaintiff's] price quote may be tainted by the affiliation between [Plaintiff] and the Indian company soliciting the price quote," an average of a range of prices from within and without the period of review would result in a more accurate surrogate value for the plating services factor of production than reliance on only Plaintiff's potentially misleading price quote. Def.-Int.'s Br. at 19. However, Defendant-Intervenor points to no evidence indicating that Plaintiff's affiliate "manipulated the circumstance by which the price quote from [Sudha Metal Finishers] was solicited[.]" Id. at 13. It is also not facially apparent how Plaintiff's affiliation with the company soliciting the price quote would necessarily have an impact on the independent company

a constructed average would result in a more accurate

valuation here than simply using information taken directly

from the period of review.  In any event, "Commerce need not

prove that its methodology was the only way or even the best

way to calculate surrogate values for factors of production,

as long as it was a reasonable way."  Coal. for the Pres. of

Am. Brake Drum and Rotor Aftermarket Mfrs. v. United States,

23 CIT 88, 118, 44 F. Supp. 2d 229, 258 (1999).  Defendant-

Intervenor's alternative approach does little to call into

question the reasonableness of Commerce's established

methodology, which the Court finds to be in accordance with

law.

**B.    COMMERCE'S VALUATION OF PLATING SERVICES IN THE <u>REMAND</u>
       <u>RESULTS</u> IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

       Second, substantial evidence supports Commerce's choice

of Plaintiff's price quote as a surrogate value for the

plating services factor of production in the Remand Results.

---

providing the price quote.  As such, the Court rejects
Defendant-Intervenor's unsubstantiated criticism of the price
quote used by Commerce in the Remand Results, as well as the
corresponding justification for Defendant-Intervenor's
proposed alternative methodology.  Cf. USCIT R. 11(b) ("By
presenting to the court . . . a pleading, written motion, or
other paper, an attorney or unrepresented party is certifying
that to the best of the person's knowledge, information, and
belief, formed after any inquiry reasonable under the
circumstances . . . the allegations and other factual
contentions have evidentiary support . . . .") (emphasis
added).

It is uncontested that the price quote used by Commerce was contemporaneous with the period of review and that the price quotes rejected by Commerce came from outside the period of review.  In addition, the reliability and representativeness of the price quote used by Commerce are not seriously in dispute.  See supra note 6.  Even assuming that Defendant-Intervenor's price quotes were equal to Plaintiff's price quote in all other respects, the temporal difference between these two sets of reliable record evidence was a sufficient basis for Commerce's evidentiary choice.[7]  Because Commerce selected the most contemporaneous surrogate value available from among the reliable and representative valuation information on the administrative record, the Court finds that Commerce's valuation of plating services in the Remand Results is supported by substantial evidence.

---

[7] The Court notes that this case is readily distinguishable from Yantai Oriental Juice Co. v. United States, 26 CIT 605, 617 (2002), which found that contemporaneity is insufficient to justify Commerce's selection of a surrogate value under certain circumstances.  In Yantai, a dispute existed as to whether Commerce's chosen surrogate value adequately represented or approximated the factor of production in question, and the court rejected contemporaneity as an adequate reason for overlooking these other potential deficiencies in Commerce's chosen surrogate value.  Id. Here, because no dispute about the representativeness of Commerce's chosen surrogate value exists, Commerce may properly differentiate between two otherwise reliable and representative surrogate values on the basis of contemporaneity.

IV.  CONCLUSION

The Court concludes that Commerce's valuation of the plating services factor of production is both in accordance with law and supported by substantial evidence.  The Court therefore sustains the Remand Results.  Judgment shall be entered accordingly.


                              /s/ Richard W. Goldberg
                              Richard W. Goldberg
                              Senior Judge


Date:     August 25, 2006
          New York, New York