**Slip Op. 07-40**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| GLEASON INDUSTRIAL PRODUCTS, INC. and PRECISION PRODUCTS, INC., | |
| Plaintiffs, | Before: Richard W. Goldberg, Senior Judge |
| v. | |
| UNITED STATES, | Court No. 06-00089 |
| Defendant, | |
| and | |
| CENTRAL PURCHASING, LLC, | |
| Defendant-Intervenor. | |

<u>OPINION</u>

[Commerce's motion for voluntary remand is granted. Plaintiff's USCIT Rule 56.2 motion denied as moot.]

Dated: March 16, 2007

<u>Crowell & Moring, LLP</u> (<u>Matthew P. Jaffe</u>) for Plaintiffs Gleason Industrial Products, Inc. and Precision Products, Inc.

<u>Adduci, Mastriani & Schaumberg, LLP</u> (<u>Louis S. Mastriani</u>, <u>William C. Sjoberg</u>) for Defendant-Intervenor Central Purchasing, LLC.

<u>Peter D. Keisler</u>, Assistant Attorney General; <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Stephen C. Tosini</u>); Office of the Chief Counsel, U.S. Department of Commerce (<u>Carrie Lee Owens</u>), of counsel, for Defendant United States.

**GOLDBERG, Senior Judge**: Plaintiffs Gleason Industrial Products, Inc. and Precision Products, Inc. (collectively "Gleason") move

the Court to enter judgment on the agency record pursuant to USCIT Rule 56.2. Defendant U.S. Department of Commerce ("Commerce") moves the Court on its own accord to remand the matter back to the agency. Defendant-Intervenor Central Purchasing, LLC ("CP") opposes both motions. For the reasons that follow, the Court grants Commerce's request for a voluntary remand.

## I.    BACKGROUND

On December 2, 2004, Commerce entered an antidumping duty order relating to hand trucks produced in China. See Hand Trucks and Certain Parts Thereof from the People's Republic of China, 69 Fed. Reg. 70122 (Dep't Commerce Dec. 2, 2004) (Notice of Antidumping Duty Order) ("Antidumping Duty Order"). The notice defined the scope of the antidumping duty order as follows:

> The merchandise subject to this antidumping duty order consists of hand trucks manufactured from any material, whether assembled or unassembled, complete or incomplete, suitable for any use, and certain parts thereof, namely the vertical frame, the handling area, and the projecting edges or toe plate, and any combination thereof.
>
> A complete or fully assembled hand truck is a hand-propelled barrow consisting of a vertically disposed frame having a handle or more than one handle at or near the upper section of the vertical frame; at least two wheels at or near the lower section of the vertical frame; and a horizontal projecting edge or edges, or toe plate, perpendicular or angled to the vertical frame, at or near the lower section of the vertical frame. The projecting edge or edges, or toe

plate, slides under a load for purposes of lifting and/or moving the load.

That the vertical frame can be converted from a vertical setting to a horizontal setting, then operated in that horizontal setting as a platform, is not a basis for exclusion of the hand truck from the scope of this petition. That the vertical frame, handling area, wheels, projecting edges or other parts of the hand truck can be collapsed or folded is not a basis for exclusion of the hand truck from the scope of the petition. That other wheels may be connected to the vertical frame, handling area, projecting edges, or other parts of the hand truck, in addition to the two or more wheels located at or near the lower section of the vertical frame, is not a basis for exclusion of the hand truck from the scope of the petition. Finally, that the hand truck may exhibit physical characteristics in addition to the vertical frame, the handling area, the projecting edges or toe plate, and the two wheels at or near the lower section of the vertical frame, is not a basis for exclusion of the hand truck from the scope of the petition.

Examples of names commonly used to reference hand trucks are hand truck, convertible hand truck, appliance hand truck, cylinder hand truck, bag truck, dolly, or hand trolley. They are typically imported under heading 8716.80.50.10 of the Harmonized Tariff Schedule of the United States ("HTSUS") although they may also be imported under heading 8716.80.50.90. Specific parts of a hand truck, namely the vertical frame, the handling area and the projecting edges or toe plate, or any combination thereof, are typically imported under heading 8716.90.50.60 of the HTSUS. Although the HTSUS subheadings are provided for convenience and customs purposes, [Commerce's] written description of the scope is dispositive.

Excluded from the scope are small two-wheel or four-wheel utility carts specifically designed for carrying loads like personal bags or luggage in which the frame is made from telescoping tubular material measuring less than 5/8 inch in diameter; hand trucks that use motorized operations either to move the hand truck from one location to the next or to assist in the lifting of items placed on the hand truck; vertical

carriers designed specifically to transport golf bags; and wheels and tires used in the manufacture of hand trucks.

Id.  On December 19, 2005, CP sent a letter to Commerce seeking a scope ruling that excluded its welding carts from the scope of the antidumping duty order.  The letter provided the following description of the two models at issue here:

> Both carts are made in China, don't have projected edges and are designed to carry welding machines only. . . . Please consider in your ruling that both have a specialized purpose which can not be utilized as a standard hand truck for which the original order is written and neither cart has projecting edges.

Letter from Heidar Nuristani, Compliance Specialist, Central Purchasing, LLC, to Secretary of Commerce at 1, 3 (Dec. 19, 2005).  CP included several photographs of the welding carts at issue with their letter.

Gleason opposed CP's request on three grounds.  First, Gleason argued the CP welding carts fell squarely within the description of hand carts contained in the antidumping duty order.  See Letter from Matthew P. Jaffe, Counsel for Gleason, to Secretary of Commerce at 2 (Jan. 4, 2006) ("Gleason Letter").  Second, Gleason claimed CP's functional argument (i.e., the carts are not covered because they are "designed to carry welding machines only") lacked any relevance to the legal question of the applicability vel non of the antidumping duty order to the CP carts.  See id. at 3.  Lastly, Gleason posited

that because its original antidumping petition included pictorial representations of "cylinder hand trucks" similar to the CP welding carts, such trucks were, in effect, incorporated into the scope of the antidumping order. See id. at 3-4.

Commerce responded by granting CP's request. See Final Scope Ruling for Central Purchasing, LLC's Two Models of Welding Carts (Feb. 15, 2006). In its scope ruling, Commerce explained its rationale:

> From the description and pictures Central Purchasing provided, the welding carts do not have a toe plate that could slide under a load, an essential characteristic as described in the scope of this order. Generally, a toe plate is positioned on the hand truck perpendicular to the vertical frame and flush with the ground to facilitate movement of an object onto the cart. The projected edges on the welding carts rise at least a half inch above the ground. At this height the projected edges on these welding carts are not able to slide under a load. In addition, the toe plates are supported by two bars that restrict the width of objects that can be loaded and carried on the carts. Thus, the welding carts possess only two of the three key physical characteristics as the subject hand trucks defined in the scope of the order. Therefore, we determine that the welding carts do not possess all of the characteristics of a hand truck as described in the scope of this order.

Id. at 5 (citation omitted). In response to Gleason's third argument, Commerce found that "the written description, not the pictures, is dispositive of what is included in the scope of the order." Id. Though it acknowledged the importance of pictorial representations during the administrative investigation,

Commerce claimed that they were ultimately assistive and illustrative, and that the verbal description controlled. See id. at 5-6.

Gleason then timely commenced an action pursuant to 19 U.S.C. § 1516a, seeking to challenge Commerce's scope ruling. Gleason filed a motion for judgment on the agency record on August 25, 2006. Three months later, Commerce shifted gears, and requested a voluntary remand so as to "reconsider its previous position in light of arguments made by plaintiffs . . . ." Def.'s Resp. Pl.'s Mot. J. Agency R. and Req. Vol. Remand 1 ("Def.'s Mot."). In its reply brief, Gleason has consented to the voluntary remand. CP, however, objects not only to Gleason's motion for judgment on the agency record, but also to Commerce's remand request.

## II.  STANDARD OF REVIEW

Where an agency requests remand without confessing error in order to reconsider its previous position, "the reviewing court has discretion over whether to remand." SKF USA, Inc. v. United States, 254 F.3d 1022, 1029 (Fed. Cir. 2001); see also Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States, 29 CIT ___, ___, 412 F. Supp. 2d 1330, 1335 (2005). "The SKF court further noted that remand is generally appropriate 'if the agency's concern is substantial and legitimate[,]' but may be refused 'if the agency's request is

frivolous or in bad faith.'" Shakeproof, 29 CIT at ___, 412 F.
Supp. 2d at 1335 (quoting SKF, 254 F.3d at 1029).  A reviewing
court's function is to screen out those frivolous and bad faith
remand requests that compromise litigants' legitimate concerns
for finality.  See Corus Staal, BV v. U.S. Dep't of Commerce, 27
CIT 388, 391, 259 F. Supp. 2d 1253, 1257 (2003) (suggesting that
"merely a change in policy" will not justify a voluntary remand
over an interested party's objection).  When, however, the
agency requests remand to correct a mistake or address some
other substantial and legitimate concern, it is far more
sensible for a court to defer to the agency whose expertise,
after all, consists of administering the statute.

### III. <u>DISCUSSION</u>

It is first necessary to establish why Commerce is
acquiescing to remand.  In its motion seeking voluntary remand,
Commerce "respectfully request[s] that the Court issue the
attached order granting Commerce a voluntary remand to allow it
to reconsider its determination."  Def.'s Mot. 4.  According to
Commerce, such reconsideration is necessary because "Gleason has
elaborated upon certain arguments and raises issues that should
be further reviewed by the agency."  Id.  Specifically, Commerce
claims that two issues require reconsideration: (1) whether the
CP welding carts have a projecting edge that easily slides under
a load; and (2) whether CP's welding carts are "cylinder hand

trucks," which are specifically included within the scope of the order.  Id. 5-6.

As for the projecting edge of the CP welding carts, Commerce was impressed by Gleason's explanation in its scope request of how the carts' projecting edges can slide under a load despite not being flush with the ground.  Id. 5.  In particular, Commerce cited Gleason's claim that the half-inch elevation of the toe plate "can actually 'assist individuals as they slide the toe plate of a hand truck under a cylinder especially where the bottom surface of the cylinder is curved.'" Def.'s Mot. 6 (quoting Pl.'s Mot. J. Agency R. 12).  Thus, Commerce's first reason is to engage in a more searching examination of the role played by the elevated toe plate.

Regarding the inclusion of the pictorial representation of cylinder hand trucks, Commerce seeks leave to explore further Gleason's argument that the carts represented in the pictorial exhibits are examples of "cylinder hand trucks," which are specifically referenced in the scope description of the underlying antidumping duty order.  Id. 7 (citing Antidumping Duty Order, 69 Fed. Reg. at 70122).

In response to Commerce's first reason, CP contends that the Vertex International, Inc. v. United States decision forecloses any further consideration of the applicability vel non of the antidumping duty order to the CP welding carts.  See

Def.-Int.'s Mem. Opp. Def.'s Req. Vol. Remand and Pl.'s Mot. J. Agency R. 12-14. In response to Commerce's second reason, CP argues that the inclusion of "cylinder hand trucks" as an example of a hand truck within the scope of the antidumping order is "meaningless," and that the Court should focus exclusively on the "three essential elements" of a hand truck. Id. 15.

Commerce is entitled to a remand on both grounds because the concerns raised are substantial and legitimate, and free from any semblance of bad faith. The Vertex International court was faced with a similar question to that posed in this litigation: whether a variety of cart could slide under a load. See Vertex Int'l, Inc. v. United States, 30 CIT ___, ___, Slip Op. 06-10 at 10-12 (Jan. 19, 2006). The Vertex International court found that the Antidumping Duty Order did not apply to a specific variety of garden carts. Id. at 12. The projecting edge of that garden cart was made of round steel wire. Id. Significantly, the operation instructions for the garden carts warned that pushing the cart could damage the product or even cause bodily injury to the operator. Id. at 11. Since the toe plates of the hand trucks covered by the antidumping duty order had to be pushed in order to slide under a load, see Antidumping Duty Order, 69 Fed. Reg. at 70122, the garden carts fell outside

the order's scope.  See Vertex Int'l, 30 CIT at ___, Slip Op. 06-10 at 12-14.

CP's reliance on Vertex International is misplaced.  CP's welding carts are drastically different than the Vertex International plaintiff's garden carts.  Vertex International does focus the attention of the agency and reviewing courts on the requirement that a hand truck must be able to slide under a load in order to fall within the purview of the Antidumping Duty Order, but it does not purport to answer that question for any product other than the garden cart at issue in the case.  Vertex International frames the issue for this Court, but it hardly decides it.  In this case, Commerce seeks remand to conduct a more searching factual examination of whether the elevated toe plates of the CP welding carts help to slide the carts under loads.  In other words, Commerce is seeking leave to conduct precisely the sort of inquiry that the Vertex International decision demands.

CP's second argument is equally unavailing.  It is of course true that the explicit terms of the Antidumping Duty Order must control the agency's subsequent decisions in scope rulings.  See Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1096-97 (Fed. Cir. 2002).  Commerce's remand request in no way controverts that plain principle.  Instead, Commerce is seeking to determine if the CP welding carts are

"cylinder hand trucks." The designation is crucial to a complete and correct resolution to the scope litigation in this case because the <u>Antidumping Duty Order</u> specifically lists "cylinder hand truck" as a name "commonly used to reference hand trucks." <u>Antidumping Duty Order</u>, 69 Fed. Reg. at 70122. As such, if Commerce makes the factual finding that the CP welding carts are cylinder hand trucks, then the <u>Antidumping Duty Order</u>'s express terms may require an assessment of antidumping duties on those carts. Gleason itself did not clearly express this argument at the administrative level, and it persuaded Commerce only after presenting a more compelling argument in its Rule 56.2 brief. <u>Compare</u> Gleason Letter at 3-4 (arguing pictorial exhibits to petition necessarily formed part of the order's scope) <u>with</u> Pl.'s Mot. J. Agency R. 14-16 (arguing that "the pictorial exhibits that form part of the petition impart material substance to the written scope description, specifically what is meant by the term 'cylinder hand truck'"). Reconsidering that designation is a substantial and legitimate concern that the agency should be permitted to make on its own before the judiciary passes its judgment on the matter.

## IV.  <u>CONCLUSION</u>

Because Commerce's request for a voluntary remand aims to address substantial and legitimate concerns, and because there are no indicia of bad faith, the Court will grant Commerce's

motion.   In light of the remand, Gleason's motion for judgment on the agency record is denied as moot.

 

 

/s/ Richard W. Goldberg__
**Richard W. Goldberg**
**Senior Judge**

**Dated:    March 16, 2007**
        **New York, New York**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

GLEASON INDUSTRIAL PRODUCTS, INC., and PRECISION PRODUCTS, INC.,

                Plaintiffs,

                v.

UNITED STATES,

                Defendant,

                and

CENTRAL PURCHASING, LLC,

                Defendant-
                Intervenor.

Before: Richard W. Goldberg,
        Senior Judge

Court No. 06-00089

## ORDER

Upon consideration of defendant's partial consent motion for voluntary remand and all other pertinent papers, and upon due deliberation, it is hereby

**ORDERED** that defendant's motion is GRANTED; and it is further

**ORDERED** that plaintiff's motion for judgment on the agency record is DENIED as moot; and it is further

**ORDERED** that this case is remanded to defendant for reconsideration of (1) whether CP's welding carts have a projecting edge that easily slides under a load and (2) whether welding carts are specifically included within the scope of the order due to the mention of "cylinder hand trucks"; and it is further

**ORDERED** that defendant shall file its remand results with the Court by June 14, 2007; and it is further

**ORDERED** that parties shall have until July 16, 2007 to file comments on the remand results; and it is further

**ORDERED** that parties shall have until July 31, 2007 to file any responses to the comments.

**SO ORDERED.**

/s/ Richard W. Goldberg\
**Richard W. Goldberg**\
**Senior Judge**

**Date: March 16, 2007**\
**New York, New York**